Thomas J. Salerno (007492)
Alisa C. Lacey (010571)
Anthony P. Cali (028261)
Clarissa C. Brady (036312)
**STINSON LLP**
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Thomas.Salerno@stinson.com
Alisa.Lacey@stinson.com
Anthony.Cali@stinson.com
Clarissa.Brady@stinson.com

*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ANDES INDUSTRIES, INC.; and<br>PCT INTERNATIONAL, INC.,<br><br>Debtors. | Chapter 11<br><br>Case No. 2:19-bk-14585-PS<br>Case No. 2:19-bk-14586-PS<br><br>*Jointly Administered* |
| THIS FILING APPLIES TO:<br><br>■ All Debtors<br>☐ Specified Debtors | **SUPPLEMENTAL DISCLOSURES REGARDING DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION DATED AUGUST 10, 2020** |

Andes Industries, Inc. and PCT International, Inc., debtors and debtors-in-possession (collectively the "**Debtors**") in these Jointly Administered Chapter 11 cases, pursuant to the Court's Minute Entry Order [Dkt. No. 883] entered on May 17, 2021, hereby file these Supplemental Disclosures regarding the *Debtors' Amended Joint Plan of Reorganization Dated August, 10 2020* [Dkt. No. 361] (the "**Plan**").

The Debtors have prepared these Supplemental Disclosures in connection with the Plan. All capitalized, undefined terms herein shall have the meanings ascribed to them in the Plan.

The Exhibits to these Supplemental Disclosures are incorporated into, and are a part of, these Supplemental Disclosures.  Any interested party desiring further information should contact:

Stinson LLP
Attn: Anthony P. Cali, Esq.
1850 N. Central Ave., Suite 2100
Phoenix, Arizona 85004
Telephone: 602-212-8509
Email: anthony.cali@stinson.com

Interested parties may also obtain further information from the Bankruptcy Court at the following website:  http://www.azb.uscourts.gov.  Each holder of claim and parties otherwise affected by the Plan should read these Supplemental Disclosures, and the Exhibits attached hereto.  These documents contain important information concerning the treatment of claims.

## I.      PLAN MODIFICATIONS.

### 1.      The Amended Committee Stipulation.

After the filing of the Plan, the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**") engaged in good-faith negotiations regarding the Debtors' financial projections and their proposed treatment of unsecured claims under the Plan, and resolved their disputes at the time pursuant to the *Stipulation in Support of Confirmation of the Debtors' Amended Joint Plan of Reorganization Dated August 10, 2020* [Dkt. No. 459] (the "**Original Stipulation**").

After the Original Stipulation was filed, EZconn Corporation, eGTran Corporation, Devon Investment, Inc., and Crestwood Capital Corporation (collectively the "**Petitioning Creditors**"), the Committee, and the Debtors negotiated a settlement agreement (*see* Section I.2. *infra*). The settlement calls for additional Effective Date payments to be made by the Debtors under the Plan, as modified, and the Debtors require financing collateralized by the proceeds of the State Court Action (defined below) that were pledged to the general unsecured creditors in the Original Stipulation in order to make the Effective Date payments.

Subsequently, the Committee expressed to the Debtors that the PC Settlement (defined below) and proposed new financing modified the Plan and affected the Original Stipulation, which led to reopened negotiations with the Debtors and modifications to the Original Stipulation as reflected in the *Amended Stipulation in Support of Confirmation of the Debtors' Amended Joint Plan of Reorganization Dated August 10, 2020* [Dkt. No. 890] (the "**Amended Stipulation**"). A copy of the Amended Stipulation is attached hereto as __**Exhibit A**__ and incorporated herein by reference. The synopsis of the Amended Stipulation contained herein is intended as a brief synopsis only. Please review the Amended Stipulation (Exhibit A) for all terms negotiated by the Debtors and the Committee. To the extent any explanation below conflicts with the Amended Stipulation, the Amended Stipulation controls.

The Amended Stipulation specifies certain treatment of General Unsecured Creditors including, without limitation, the following: (1) a $1.2 million Effective Date payment to Classes 3-B, 3-C, and 3-D [Amended Stipulation, ¶ 17]; (2) an interest rate of 1.5% per annum applied to the Allowed Claims within Class 3-B and 3-C [Amended Stipulation, ¶ 18]; (3) specified recoveries resulting from certain causes of action to be pursued by the Debtors [Amended Stipulation, ¶ 19]; defined payment schedules applicable to holders of Claims in Classes 3-B and 3-C [Amended Stipulation, ¶ 20]; additional quarterly payments of $62,500 for 16 quarters, beginning on September 1, 2021, for holders of Allowed Claims in Class 3-B in addition to the cumulative amounts described in paragraph 19 [Amended Stipulation, ¶ 22]; the appointment of a Plan Agent from the Committee to do, among other things, the following: (i) to oversee distributions made under the Plan, (ii) receive regular reporting from the Reorganized Debtors, and (iii) to oversee or demand action on any Chapter 5 cause of action held by the Debtors. [Amended Stipulation, ¶¶ 26–37].

The following table summarizes the treatment of General Unsecured Claims as provided for in the Plan, the Original Stipulation, and the Amended Stipulation. It is intended as a brief synopsis only. Please review the applicable documents for all terms

negotiated by the parties thereto. To the extent any explanation below conflicts with the

Plan and/or Amended Stipulation, the Plan and/or Amended Stipulation control.

| Unsecured Creditor Class | Plan (Dkt. No. 361) | Original Stipulation (Dkt. No. 459) | Amended Stipulation (Dkt. No. ) |
|---|---|---|---|
| 3-A: Critical Vendors | • Paid in full by third anniversary of Effective Date via equal monthly installments | • Same as Plan | • Same as Plan |
| 3-B: General Unsecured Claims | • Paid in quarterly installments over 10 years with interest accruing at the federal judgment rate. • Payments made pro rata amongst Classes 3-B and 3-C from Net Available Cash after payments to priority claims, critical vendors and secured claims • Any amounts remaining owing will be paid on 10th anniversary of the Effective Date | • $1.2 million distributed *pro rata* to Classes 3-B, 3-C, and 3-D on the Effective Date (3-D's *pro rata* portion subject to 50/50 reduction described below) • 1.5% interest rate applied to Class 3-B Claims • Established minimum bi-annual payments to Allowed Claims in Class 3-B • 85%/15% split of net recoveries of specified causes of action between General Unsecured Creditors and the Debtors | • $1.2 million distributed *pro rata* to Classes 3-B, 3-C, and 3-D on the Effective Date (3-D's *pro rata* portion subject to 50/50 reduction described below) • 1.5% interest rate applied to Class 3-B Claims • Established minimum bi-annual payments to Allowed Claims in Class 3-B • 100% of net recoveries (including net of litigation financing [Dkt. No. 881] of specified causes of action to General Unsecured Creditors until paid in full • Additional quarterly payments of $62,500 for 16 quarters, beginning on September 1, 2021, for Class 3-B |
| 3-C: Petitioning Creditors | • Same as Class 3-B | • $1.2 million distributed *pro rata* to Classes 3-B, 3-C, and 3-D on the Effective Date | • Same as Original Stipulation except for 1.5% interest rate now applied to Class 3-C Claims |

| | | | |
|---|---|---|---|
| | | (3-D's *pro rata* portion subject to 50/50 reduction described below)<br>• Similar bi-annual minimum payments to Class 3-C as to those established for Class 3-B<br>• 85%/15% split of net recoveries of specified causes of action between General Unsecured Creditors and the Debtors | |
| 3-D: Subsidiary Claims | • PCTY will waive its claims against PCT; PCTV will reduce its claim by $4 million, and remaining claim of about $2,011,000 paid in same fashion as Class 3-B claims | • PCTV Claim paid 50% in same fashion as the claims in Class 3-B and remaining 50% paid only after all other Allowed General Unsecured Creditors are paid in full. | • Same as Original Stipulation |
| 3-E: Youtsey Claim | • No payments until all other Allowed Claims paid in full. | • Same as Plan | • Same as Plan |

## 2. The PC Settlement

For several months, the Debtors, the Committee, and the Petitioning Creditors engaged in negotiations resulting in the execution of the "Settlement Term Sheet" (the "**PC Settlement**") entered into by the Petitioning Creditors, Mr. Chi-Jen (Dennis) Lan and Polar Star Management, Ltd. (collectively with the Petitioning Creditors, the "**Petitioning Creditors and Interest Holders**"), the Committee and the Debtors. The PC Settlement has been approved by the Court in accordance with the *Order Granting Joint Motion for Approval of Settlement Pursuant to Bankruptcy Rule 9019* [Dkt. No. 845]. The PC Settlement is attached hereto as **Exhibit B** and incorporated herein by reference.

The PC Settlement specifies Plan treatment for the "Judgment Creditors" in Class 3-C. The following is intended as a brief synopsis only. Please review the PC Settlement (Exhibit B) for all terms negotiated by the parties thereto. To the extent any explanation below conflicts with the PC Settlement, the PC Settlement controls. The material terms of the PC Settlement are as follows:

- <u>Withdrawal of the Petitioning Creditors' Plan</u>: Pending confirmation of the Debtors' Plan, the *Petitioning Creditors' Third Amended Plan of Reorganization of Andes Industries, Inc. and PCT International Inc. Dated September 10, 2020* [Dkt. No. 406] (the "**Petitioning Creditors' Plan**") will be held in abeyance. Upon confirmation of the Debtors' Plan, the Petitioning Creditors' Plan will be withdrawn.

- <u>Withdrawal of the Motion to Designate</u>: Upon confirmation of the Debtors' Plan, the Debtors will withdraw the *Motion to Designate the Votes of Petitioning Creditors Under Section 1126(e)* [Dkt. No. 775].

- <u>Withdrawal of Plan Objections and Motion to Convert</u>: Pursuant to the PC Settlement, the Petitioning Creditors withdrew *Motion to Convert Cases to Chapter 7 Proceedings* [Dkt. 626], and the Petitioning Creditors and Interest Holders shall withdraw their objections to the Debtors' Plan.

- <u>Effective Date Payments to Creditors and Interest Holders</u>: The Petitioning Creditors and Interest Holders shall receive a $1.85 million cash payment from the $2 million capital contribution to the Debtors on the Effective Date of the Debtors' Plan. (As noted below, the Petitioning Creditors and Interest Holders shall receive their *pro rata* share of the $1.2 million Effective Date payment due to general unsecured creditors in the Amended Stipulation, or approximately $812,659, which when combined with the $1.85 million payment is a total of approximately $2,662,659 to the Petitioning Creditors on the Effective Date of the Plan.)

- **Dismissal of Adversary Proceeding and Pending Appeal**: Pending confirmation of the Debtors' Plan, Adversary Case No. 2:20-ap-00161 (the "**Adversary Proceeding**") against the Petitioning Creditors will be held in abeyance. Upon confirmation of the Debtors' Plan, the Debtors and Committee shall dismiss the Adversary Proceeding against the Petitioning Creditors, with prejudice, and stipulate to the full allowance of the Petitioning Creditors' Claims [Claim Nos. 13, 15–18]. PCT shall also dismiss appeal 19-15518 in the Ninth Circuit Court of Appeals. For avoidance of doubt, the Committee shall dismiss the *Joinder to and Intervenor Complaint for Equitable Subordination of Claims Pursuant to 11 U.S.C. Section 501(C)* [Adv. Dkt. No. 75] against the Petitioning Creditors with prejudice.

- **Treatment of Petitioning Creditors' Claims**: The Petitioning Creditors, in addition to the Effective Date payment noted in subsection (d) above, will receive their *pro rata* share of the $1.2 million Effective Date payment due to general unsecured creditors under the Amended Stipulation. The payoff amount of the Petitioning Creditors' claims would be subject to the following sliding scale:

  - Payoff if paid by the 1st Anniversary of Effective Date: $6.9M

  - Payoff if paid after the 1st Anniversary of the Effective Date and on or before the 2nd Anniversary of Effective Date: $11.5M

  - Payoff if paid after the 2nd Anniversary of the Effective Date and on or before the 3rd Anniversary of Effective Date: $12.5M

  - Payoff if paid after the 3rd Anniversary of the Effective Date and on or before the 4th Anniversary of Effective Date: $13.5M

  - Payoff if paid after the 4th Anniversary of the Effective Date and on or before the 5th Anniversary of Effective Date: $15.0M (all of the foregoing defined as "**Early Payment Options**")

o   For calculation of Early Payment Options, the payoff amount shall be the amounts set forth above less any payments already made to the Creditors and Interest Holders under the Plan.

o   If the Debtors do not exercise the early payment options on or before the 5th anniversary of the Effective Date of the Plan, the Petitioning Creditors shall have the remainder or their allowed claims paid in full under the terms of Plan § IV(C)(3).

•   <u>Mutual Releases</u>: As set forth more specifically in the PC Settlement (Section 4), the Debtors, on the one hand, and each of the Creditors and Interest Holders on the other hand, agree to release and discharge each other from any and all claims existing up until the effective date of the PC Settlement.

As described above, the payoff amount of the Petitioning Creditors' claims will be subject to a sliding scale that incentivizes the Debtors to pay off the Petitioning Creditors' claims as soon as possible [PC Settlement, § 2.h.ii]. The total payoff amount ranges from $6.9 million by the 1st anniversary of the Effective Date of the Plan (*i.e.* a discount of 69% of the amount of the allowed claim) to $15 million by the 5th anniversary of the Effective Date of the Plan (*i.e.* a discount of 32%). *Id.* If the Debtors do not exercise the early payoff option on or before the 5th anniversary of the Effective Date of the Plan, the Petitioning Creditors shall have their allowed claims paid in full in accordance with Section IV.C.3 of the Plan [PC Settlement, § 2.h.iii].

**3.   The PPP Stipulation.**

On November 24, 2020, the Debtors and MidFirst Bank (the "**PPP Lender**") entered into the *Stipulation Providing for (1) Allowance and Plan Treatment of PPP Lender's Administrative Expense Claim; and (2) Other Related Relief* [Dkt. No. 544] (the "**PPP Stipulation**"). The PPP Stipulation has been approved by this Court pursuant to the *Order Approving Stipulation Providing for (1) Allowance and Plan Treatment of PPP Lender's Administrative Expense Claim; and (2) Other Related Relief* [Dkt. No. 598] (the "**PPP Stipulation Order**").

PPP Lender did not hold a claim against the Debtors' bankruptcy estates on the Petition Date. On June 24, 2020, the Court entered the *Order Granting PCT's Emergency Motion to Approve Post-Petition "Debt" Pursuant to the Cares Act's Paycheck Protection Program* [Dkt. No. 317] (the "**PPP Loan DIP Financing Order**"). On June 25, 2020, PPP Lender advanced a PPP loan to PCT in the principal amount of $847,500 (the "**PPP Loan**"), evidenced by a Promissory Note dated June 25, 2020 (the "**PPP Loan Note**"). If PCT uses the loan proceeds in compliance with the PPP program, some or all of the principal of the indebtedness due under the PPP Loan may be forgiven. The Debtors have completed their forgiveness application, which was subsequently reviewed by the PPP Lender and submitted to the Small Business Administration (the "**SBA**") on May 12, 2021. The SBA has 90 days to make a determination as to whether the PPP Loan may be forgiven.

As provided for in the PPP Stipulation and approved by the PPP Stipulation Order, PPP Lender holds an allowed administrative claim against the Debtors' bankruptcy estates. Pursuant to the PPP Stipulation, PPP Lender's allowed administrative expense claim, including PPP Lender's actual bankruptcy attorney's fees and costs not to exceed $10,000 shall be paid in cash and in full on the Effective Date of the Plan [PPP Stipulation, ¶ 16]. Upon confirmation of the Plan, any portion of the PPP Loan not forgiven is to be paid according to the terms included in the PPP Loan Note [PPP Stipulation, ¶ 17]. In the event that the PPP Loan DIP Financing Order is reversed or vacated on appeal and the SBA obtains a final judgment in its favor, and that loan is not forgiven the entire PPP Loan amount, including interest and attorneys' fees and costs of PPP Lender and the SBA shall be immediately due and payable in full as an allowed administrative expense claim to be paid on the later of the Effective Date or the date of entry of final judgment in the SBA's favor [PPP Stipulation, ¶ 18].

**4.      The MCT Stipulation.**

On April 9, 2021, the Debtors and the Maricopa County Treasurer's Office entered into the *Stipulation and Order Regarding Treatment of Maricopa County Treasurer's*

*Claim Under Debtors' Proposed Chapter 11 Plan & Withdraw of Related Plan Objection* [Dkt. No. 849] (the "**MCT Stipulation**"). The MCT Stipulation provides specific plan treatment of the Maricopa County Treasurer's priority tax claims in the agreed amounts of $3,973.67 and $1,973.55 under Class 1-B of the Plan [MCT Stipulation, ¶¶ 5–6]. The MCT Stipulation secures a discounted payoff of the MCT claims over the face amount of the claims asserted and resolves MCT's *Objection to Debtors' Amended Joint Plan of Reorganization dated August 10, 2020* [Dkt. No. 371].

### 5.    Changes to Post-Confirmation Reorganized Debtor.

Due to the PC Settlement, the creation of a newly formed company ("**Newco**")—as previously contemplated by the Plan—is no longer necessary. Instead, the Reorganized Andes will cancel all shares except for those of the funding shareholders—Steve Youtsey, Wendy Chiao, and Wade Ferguson. Those individuals will remain as shareholders and retain their current shares in Andes in exchange for the equity contributions described in Section V.A. of the Plan. As before, Reorganized Andes will retain 100% of the equity interests in PCT. For purposes of clarity, and in accordance with Bankruptcy Code § 1123(a)(6), the Reorganized Debtors will not be issuing non-voting equity securities. This change to the organizational structure of the Reorganized Debtors does not adversely impact any creditor or claimant. The treatment of equity holders in Class 4 remains the same as it did previously under the Plan.

### 6.    Non-Material Supplement Regarding Additional Liquidity Line

The Debtors have recently negotiated a term sheet for a post-petition line of credit (the "**Liquidity Line**") with a third-party lender, TRGP Investment Partners, LP (the "**Liquidity Line Lender**"). The Liquidity Line Lender has committed to provide a $5 million Liquidity Line, which will provide additional liquidity to the Debtors in order to make Effective Date payments under the Plan, as modified by the Amended Stipulation and the PC Settlement. The Liquidity Line Lender's sole source of recovery will be from any future award, judgment, or settlement (collectively, the "**Award**") of the Debtors' state

court action against Robins Kaplan LLP and/or Coppersmith Brockelman PLC (the "**State Court Action**").[1]

The terms and condition of the proposed Liquidity Line are set forth in the Term Sheet itself, which is attached as **Exhibit C** hereto and incorporated herein by reference. The following is intended as a brief synopsis only. Please review the Term Sheet (Exhibit C) for all terms negotiated between and executed by the Debtors and the Liquidity Line Lender.  To the extent any explanation below conflicts with Term Sheet, the Term Sheet controls.

- Loan Amount: Liquidity Line Lender will provide financing of up to $5 million to provide the Debtors with working operational capital.

- Use of Funds: PCT may use the $5 million for operational expenses or payments under any plan of reorganization.

- Collateral: The Liquidity Line Lender's sole recourse for payments of amounts loaned under the Liquidity Line shall be recoveries from the State Court Action after distribution to the Debtors' special counsel, Beus Gilbert & McGroder, PLLC (the "**Beus Firm**") at their contingency rate of 33% or 40% dependent on the state of the litigation as agreed to between the Debtors and the Beus Firm in the terms of their engagement (the "**Net Recoveries**").

- Proceeds Waterfall:

  o **First**, 100% of Net Recovers to Liquidity Line Lender until Liquidity Line Lender has received an amount equal to the specified

---

[1]    While this has been referred to as "litigation financing" by some of the parties in the bankruptcy proceedings, it is not litigation financing in the sense that the financing can only be used to pay expenses of litigation (which is more traditional "litigation financing"). Given the retention of the Beus Firm, which is essentially funding the State Court Action in its entirety pursuant to the Court-approved retention [Dkt. No. 347], there is no need for funding of litigation expenses for the State Court Action. As such, the Liquidity Line has been referred to as "litigation financing" because the sole recourse for the lender will be the proceeds (if any) from the State Court Action.

time-based multiple of funds actually invested by Liquidity Line Lender as per below:

| Recovery Received Between and | | Multiple of Amount Loaned |
|---|---|---|
| 0 months | 15 months | 2.00x |
| 15 months | 30 months | 3.00x |
| 30 months | thereafter | 3.50x |

    o    **Second**, 100% of the remaining Net Recoveries up to $40 million to the Debtors (i.e. of the first $40 million in Net Recoveries, Liquidity Line Lender shall receive its distribution in 12(d)(i) and the Debtors shall receive the remainder.

    o    **Third**, 5% of the remaining Net Recoveries to Liquidity Line Lender thereafter, stepping up to 10% if the State Court Action is resolved and recoveries are distributed 36 months or more after the effective date of the Loan Documents.

As noted above, the Liquidity Lender's sole source of recovery will be from any future Award in the State Court Action. The Liquidity Line will otherwise be non-recourse as to the Debtors, but may be used by the Debtors to make effective date payments under the Plan, and otherwise has no interim payments or debt service related thereto. The Debtors have determined that its existing financial circumstances necessitate the Liquidity Line in order to meet its restructuring needs—namely, in order to make the Effective Date payments required by the Plan, as modified by subsequent agreements.

## II.   EFFECTIVE DATE PAYMENTS AND SOURCES AND USES OF CASH.

The Plan previously contemplated a $2 million equity infusion from Steven Youtsey and Wendy Chiao to fund Effective Date payments. In view of changed circumstances in these proceedings—the PC Settlement, the Amended Stipulation, and additional months of bankruptcy proceedings with attendant administrative costs, the Debtors now also require the Liquidity Line—in the amount of approximately $5 million—to satisfy Effective Date payments. The Debtors have prepared an Effective Date

payment analysis, which is attached hereto as **Exhibit D** and is incorporated herein by reference.

## III. UPDATED PLAN PROJECTIONS.

With consideration of, among other things, the foregoing, the Debtors have prepared plan payment and cash flow projections extending through the year 2030 (collectively, the "**Projections**"). The Projections are attached hereto as **Exhibit E** and incorporated fully herein by this reference. The Projections are based upon the Debtors' best estimates of the future revenues to be generated through their operations and the future expenses the Debtors expect to incur. The Projections assume that the Allowed Claim of the Petitioning Creditors in Class 3-C will be paid in full over the term of the Plan. Pursuant to the PC Settlement, the Debtors have the option to pay the Petitioning Creditors' claim early at substantial discount. Furthermore, the Projections do not provide for any recoveries from an Award in the State Court Action or contemplate any new financing aside from the Liquidity Line.

In addition, the Debtors' Projections are based upon consultation with the Debtors' sales teams and a thorough and critical analysis of the Debtors' current customer base and its anticipated future customers that will be specifically targeted by the Debtors upon their emergence from bankruptcy, as well as the application of industry standard ratios and metrics. The Debtors' expense projections are based upon the Debtors' historical margins taking into account the Debtors' substantial and long-term reductions in overhead and improved efficiencies.

RESPECTFULLY SUBMITTED this 21st day of May, 2021.

**STINSON LLP**

/s/ Anthony P. Cali
Anthony P. Cali
1850 N. Central Ave., Suite 2100
Phoenix, Arizona 85004-4584

*Attorneys for Debtors*

# Exhibit A

1   Thomas J. Salerno (007492)
2   Alisa C. Lacey (010571)
    Anthony P. Cali (028261)
3   Clarissa C. Brady (036312)
    **STINSON LLP**
4   1850 N. Central Avenue, Suite 2100
5   Phoenix, Arizona 85004-4584
    Tel: (602) 279-1600
6   Fax: (602) 240-6925
7   Thomas.Salerno@stinson.com
    Alisa.Lacey@stinson.com
8   Anthony.Cali@stinson.com
    Clarissa.Brady@stinson.com
9   *Attorneys for Debtors*
10

11              **IN THE UNITED STATES BANKRUPTCY COURT**

12                 **FOR THE DISTRICT OF ARIZONA**

13  In re:                              | Chapter 11

14  ANDES INDUSTRIES, INC.; and         | Case No. 2:19-bk-14585-PS
15  PCT INTERNATIONAL, INC.,            | Case No. 2:19-bk-14586-PS

16              Debtors.                | *Jointly Administered*

17  THIS FILING APPLIES TO:

18  ■ All Debtors                       | **AMENDED STIPULATION IN**
                                        | **SUPPORT OF CONFIRMATION OF**
                                        | **THE DEBTORS' AMENDED JOINT**
19  ☐ Specified Debtors                 | **PLAN OF REORGANIZATION**
                                        | **DATED AUGUST 10, 2020**
20

21

22          Andes Industries, Inc. ("Andes") and PCT International, Inc. ("PCT," and collectively

23  with Andes, the "Debtors"), on the one hand, and the Official Committee of Unsecured

24  Creditors (the "Committee," and collectively with the Debtors, the "Parties"), on the other

25  hand, as evidenced and confirmed by the signatures of their respective counsel below, hereby

26  agree and stipulate as follows (the "Stipulation"):

27                              **RECITALS**

28          1.      On November 15, 2019 (the "Petition Date"), involuntary Chapter 7

1    bankruptcy petitions were filed against the Debtors, thereby commencing the above-
2    captioned bankruptcy cases.

3        2.    On December 2, 2019, the Debtors filed motions to voluntarily convert these
4    bankruptcy cases to Chapter 11 proceedings.

5        3.    The Debtors' motions to convert were granted, and an order for relief was
6    therefore entered, in these Chapter 11 cases on December 4, 2019.

7        4.    The Committee was duly constituted and appointed by the United States
8    Trustee for the District of Arizona by filing of her *Appointment of Official Joint Committee*
9    *of Unsecured Creditors* [DE 138], as amended on February 13, 2020 [DE 155].

10       5.    FTI Consulting (Hong Kong) Limited, ACB Import Services, Inc. and GZT
11    Telkom-Telmor SP. z.o.o (collectively, the "Committee Members") are the members of the
12    Committee.

13       6.    On August 10, 2020, the Debtors filed their *Amended Joint Plan of*
14    *Reorganization Dated August 10, 2020* [DE 361] (as ultimately amended, the "Plan").

15       7.    On August 10, 2020, the Debtors filed their *Joint Second Amended Disclosure*
16    *Statement Relating to Debtors Joint Plan of Reorganization Dated August 10, 2020* [DE 362]
17    (the "Disclosure Statement").

18       8.    On August 13, 2020, the Court entered its order approving the Disclosure
19    Statement.

20       9.    On September 11, 2020, EZconn Corporation, eGTran Corporation, Devon
21    Investment, Inc., and Crestwood Capital Corporation (the "Petitioning Creditors") filed the
22    *Petitioning Creditors' Third Amended Plan of Reorganization of Andes Industries, Inc. and*
23    *PCT International Inc. Dated September 11, 2020* [DE 409] (the "Petitioning Creditors'
24    Plan").

25       10.    After the filing of the Plan, the Parties engaged in good-faith negotiations
26    regarding the Debtors' financial projections and their proposed treatment of unsecured claims
27    under the Plan, and resolved their disputes at the time pursuant to the *Stipulation in Support*

28

of *Amended Joint Plan of Reorganization Dated August 10, 2020* [DE 459] ("Original Stipulation").

11. After the Original Stipulation was filed, the Committee, the Debtors, and Petitioning Creditors negotiated a settlement agreement [Exhibit A to DE 802] ("PC Settlement") that after notice and hearing the Court approved [DE 845].

12. The PC Settlement calls for additional Effective Date payments to be made by the Debtors under the Plan as modified, and the Debtors require financing collateralized by the Litigation Recoveries (defined below) that were pledged to the General Unsecured Creditors in the Original Stipulation in order to make the Effective Date payments [DE 881, 882].

13. The Committee expressed to the Debtors that the PC Settlement and proposed new financing modified the Plan and affected the Original Stipulation, which led to reopened negotiations with the Debtors and the additional terms as set forth herein.

14. The Debtors and the Committee have agreed to the terms and conditions set forth herein to resolve all of their disputes relating to, and to promote confirmation of, the Debtors' Plan.

## STIPULATION

15. The recitals above are true and hereby affirmed by the Parties.

16. The proposed order confirming the Debtors' Plan shall incorporate the terms of this Stipulation.

17. On the Effective Date,[1] the Reorganized Debtors shall pay $1,200,000 to holders of Allowed Claims in Class 3-B, and Class 3-C and Class 3-D[2] to the extent such classes receive equivalent treatment (collectively, "General Unsecured Creditors"). In accordance with the terms of the Plan, this Stipulation, and the PC Settlement, this

---

[1] Any capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the Plan.

[2] Class 3-D's share of the *pro rata* Effective Date payments is subject to the agreed-upon reduction reflected in Paragraph 24, *infra.*

$1,200,000 will be distributed to holders of Allowed Claims in Classes 3-B, 3-C, and 3-D, on a *pro rata* basis. Class 3-B's *pro rata* share of the $1,200,000 will be distributed on a *pro rata* basis among members of that class after payment of Class 3-B "administrative convenience" claims of less than $3,000, totaling approximately $43,000.

18. The interest rate payable under the Plan to holders of Allowed Claims within Class 3-B and Class 3-C shall be 1.5% *per annum*.

19. Any recovery, net of costs of prosecution, enforcement, repayment of litigation financing as set forth in DE 881, if approved, and collection, derived from causes of action prosecuted by the Reorganized Debtors, including, but not limited to, any actions arising under Chapter 5 of the Bankruptcy Code, the malpractice claims against Robins Kaplan LLP and/or Coppersmith Brockelman PLC (collectively, "<u>Litigation Recoveries</u>") will be distributed by the Debtors 100% to General Unsecured Creditors, until all General Unsecured Creditors are paid in full. This paragraph shall be binding on any subsequently appointed Chapter 11 Trustee or Chapter 7 Trustee.

20. The Reorganized Debtors will pay the following cumulative amounts to the holders of Allowed Claims in Class 3-B, in aggregate, by the following dates (Allowed Claims in Class 3-C shall receive similar *pro rata* minimum payments, unless Class 3-C's claim is satisfied in accordance with the PC Settlement):

        a.       September 30, 2021: $75,000

        b.       December 31, 2021: $100,000

        c.       June 30, 2022: $300,000

        d.       December 31, 2022: $500,000

        e.       June 30, 2023: $700,000

        f.       December 31, 2023: $1,000,000

        g.       June 30, 2024: $1,300,000

        h.       December 31, 2024: $1,750,000

        i.       June 30, 2025: $2,000,000

        j.       December 31, 2025: $2,500,000

| | | |
|---|---|---|
| k. | June 30, 2026: | $3,000,000 |
| l. | December 31, 2026: | $3,500,000 |
| m. | June 30, 2027: | $4,000,000 |
| n. | December 31, 2027: | $4,500,000 |
| o. | June 30, 2028: | $5,000,000 |
| p. | December 31, 2028: | $5,500,000 |
| q. | June 30, 2029: | $6,000,000 |
| r. | December 31, 2029: | $6,500,000 |
| s. | June 30, 2030: | $7,000,000 |
| t. | 10th Anniversary of the Effective Date: Paid in full | |

21. After the initial $1,200,000 paid on the Effective Date, any payment received by the holders of Allowed Claims in Class 3-B and Class 3-C, including from Litigation Recoveries, shall be included in calculating the aggregated and cumulative amounts required to be paid in Paragraph 20 above.

22. In addition to the cumulative amounts set forth in paragraph 20 above, beginning September 1, 2021, the Debtors shall pay holders of Allowed Claims in Class 3-B an additional $62,500 per quarter for 16 quarters ("Quarterly Payments"). For clarity, the Quarterly Payments will not be taken into account as part of the cumulative amounts described in paragraph 20.

23. The definition of "Net Available Cash" in the Plan is revised as follows: The total amount of funds available for the payment of Allowed Claims under the Plan, determined in accordance with the methodology reflected in the projections attached to the Debtors' Disclosure Statement as Exhibit "A," as ultimately amended, multiplied by the following percentage for the implicated year: 50% for 2020, 2021, and 2022; 55% for 2023; 65% for 2024, 2025; and 70% for each year thereafter. The Net Available Cash, as multiplied by the percentage set forth above for the implicated year, will be the total amount of funds available for the payment of Allowed Claims under the Plan in any given year. Any portion of the Litigation Recoveries retained by the Reorganized Debtors shall be excluded from the

calculation of Net Available Cash.

24. The Allowed Claim of PCT Vietnam within Class 3-D will be paid as follows: 50% in the same fashion as the claims included within Class 3-B, and the remaining 50% shall be paid only after all Allowed General Unsecured Creditors are paid in full.

25. Nothing herein shall restrict the Committee (pre-confirmation) or the Plan Agent[3] (post-confirmation) from objecting to claims asserted against the Debtors' estates.

26. The Parties agree that, as of the Effective Date, Hilary L. Barnes, Esq., will be appointed to serve as agent for the General Unsecured Creditors ("Plan Agent").

27. In the event of the resignation of the Plan Agent, or in any other event in which the Plan Agent is unable to continue to act, a successor Plan Agent may be appointed by the Plan Agent. Any successor Plan Agent must be approved by the previous Plan Agent and the Reorganized Debtors. Upon the appointment of a successor Plan Agent, the Reorganized Debtors will provide notice of such appointment to the General Unsecured Creditors. If no appointment and approval of a successor Plan Agent is made by the Plan Agent and Reorganized Debtors within a reasonable time after a resignation, removal or other event relating to the prior Plan Agent, the Bankruptcy Court may appoint a successor Plan Agent after notice and a hearing.

28. The Plan Agent shall be authorized and directed to act in good faith as necessary or desirable to ensure the Reorganized Debtors' compliance with the Debtors' Plan's treatment of General Unsecured Creditors, including without limitation to appear and participate in any proceeding before the Bankruptcy Court, or any other court of competent jurisdiction, with respect to any matter regarding or relating to the Debtors' Plan. The Plan Agent, in his or her discretion, may but is not required to seek Bankruptcy Court approval of the Plan Agent's action.

29. Within twenty-one (21) calendar days after the end of the preceding calendar quarter, the Reorganized Debtors will deliver to the Plan Agent reports, in a format

---

[3] "Plan Agent" is defined in Paragraph 26.

reasonably acceptable to the Plan Agent and the Reorganized Debtors, setting forth (a) the status of litigation claims, anticipated settlements, and an accounting of any litigation proceeds received and/or distributed by the Reorganized Debtors; (b) actual compared to projected income for purposes of distributions to general unsecured creditors as set forth in the Plan; (c) quarterly financial statements and (d) an accounting of any distributions made under the Plan, including a calculation by which the amount of the distributions made to each General Unsecured Creditor was determined (collectively, "Quarterly Reports"). The Quarterly Reports will be prepared by the Reorganized Debtors' management and will not be necessarily reviewed or audited by any third party. The Plan Agent shall review and analyze the Quarterly Reports, be entitled to request and receive further information or backup documentation related to the Quarterly Reports, as necessary and prudent, and take any action in good faith related thereto to ensure transparency and accountability by the Reorganized Debtors under the Debtors' Plan.

30. The Debtors may not draw upon post-confirmation litigation financing further encumbering the Litigation Recoveries without approval of the Plan Agent, which shall not be unreasonably withheld, and if the Parties cannot agree, they can bring the issue to the Bankruptcy Court for approval.[4]

31. The Reorganized Debtors shall keep reasonable and accurate accounts, records, books, journals, ledgers and data with respect to their business operations and financial affairs ("Records"). The Plan Agent, and any of his or her retained agents or professionals, shall have the right, subject to reasonable guarantees of confidentiality and redaction or other protection of customer and pricing information the dissemination of which may pose a risk to the Reorganized Debtors' competitive position, upon reasonable advance notice, to inspect such Records to ensure the Reorganized Debtors' compliance with the Plan and the projections contained therein.

---

[4] For the avoidance of doubt, this Paragraph does not apply to the financing that is the subject of the Debtors' *Motion for Order Authorizing Debtors to Obtain Post-Petition Exit Financing* [DE 881].

32.     Notwithstanding anything herein to the contrary, the Plan Agent will not have the authority to interfere with, or assert any control over, the Reorganized Debtors' operational or managerial actions or decision-making or, except as expressly provided for herein, take any action on behalf of the Reorganized Debtors.

33.     On or before the Effective Date, the Reorganized Debtors will transfer $35,000 into a segregated account created, and to be maintained, by the Plan Agent (the "Plan Agent Reserve Account").  The Plan Agent will hold the funds in the Plan Agent Reserve Account, and any funds that may subsequently deposited therein in accordance with this Stipulation, in trust for the benefit of General Unsecured Creditors.

34.     The Plan Agent may use the Plan Agent Reserve Account to fund litigation or other court actions to ensure the Reorganized Debtors' compliance with the Debtor's Plan, including related fees and expenses, as may be deemed advisable by the Plan Agent in his or her reasonable discretion without the need for the Reorganized Debtors' approval.  Upon Reorganized Debtors' completion of all payments to General Unsecured Creditors under the Debtors' Plan, the Plan Agent will be discharged and, after payment of reasonable costs as provided herein, shall disburse any remaining amounts held in the Plan Agent Reserve Account to the Reorganized Debtors.

35.     Within thirty (30) calendar days after the Effective Date, the Reorganized Debtors shall provide the Plan Agent with an analysis of potential actions arising under Chapter 5 of the Bankruptcy Code.  The Plan Agent shall have standing to demand that the Reorganized Debtors bring any Chapter 5 cause of action the Plan Agent deems to be advisable, after consideration of the impacts any such action may have on the Reorganized Debtors' ongoing operations and business relationships.  If the Reorganized Debtors decline to bring any such action, the Reorganized Debtors shall assign such action to the Plan Agent. The Plan Agent, including its agents and professionals, may be paid compensation for fees and expenses incurred in such action solely from recovery obtained through such action.  In the event the Plan Agent pursues such an action, prevails, and receives a recovery, all of the proceeds available after payment of the Plan Agent and its professionals, including

reimbursement of any related funds expended from the Plan Agent Reserve Account, will be distributed or reserved, as appropriate, to Allowed General Unsecured Creditors and shall be applied toward the minimum payments established by Paragraph 20 above.

36.     Upon confirmation of the Debtors' Plan and prior to the Effective Date, the Parties shall reach a mutually agreeable annual budget ("Budget") related to the Reorganized Debtors' compensation and reimbursement of the Plan Agent's fees and costs, including for any professionals retained by the Plan Agent, for services rendered in connection with the Plan Agent's services as set forth herein.  If the Parties cannot mutually agree on a Budget, the Parties shall submit the dispute to the Bankruptcy Court for adjudication as to the reasonableness of any proposed Budget.

37.     Subject to the Budget, including a 10% variance therefrom, the Plan Agent, and any professionals retained by the Plan Agent, shall be entitled to reasonable compensation, and reimbursement of reasonable expenses, for their services rendered as set forth herein.  The Plan Agent, and any professionals retained by the Plan Agent, may not exceed the Budget, as augmented by a 10% variance, unless previously approved in writing by the Reorganized Debtors.  The Plan Agent, and any professionals retained by the Plan Agent, shall submit invoices related to the services rendered by the Plan Agent and such professionals in accordance with paragraphs 28 through 31, above, to the Reorganized Debtors on a monthly basis.  If the Reorganized Debtors do not object in writing, to any portion of the submitted invoices within twenty-one (21) calendar days of their delivery, the Reorganized Debtors shall pay the invoice promptly thereafter.  If the Reorganized Debtors object in writing to any invoice received from the Plan Agent or any professional retained by the Plan Agent, and if the Reorganized Debtors' objection cannot be resolved through informal negotiations, the Parties may submit the dispute to the Bankruptcy Court for resolution.

38.     The Bankruptcy Court will reserve jurisdiction to hear and decide any disputes regarding this Stipulation.

39.     Upon default of any of the provisions contained in the Debtors' Plan or any

provision contained herein related to payment or treatment of General Unsecured Creditors, the Plan Agent shall provide the Reorganized Debtors with written notice of such default. If the Reorganized Debtors fail to cure such default within thirty (30) calendar days of receiving such written notice, and the Parties cannot reach a mutually agreeable resolution, the Plan Agent is authorized and may file a motion to reopen the bankruptcy cases (if they have been closed) and/or file a notice of plan default with the Bankruptcy Court, and seek revocation of the Plan and/or conversion of the case to a proceeding under Chapter 7. Before taking such actions, the Plan Agent shall discuss with, and take into account the recommendations of any interested party the Plan Agent deems advisable to consult.

40. In the event that the Plan Agent discovers any misappropriation of funds, or unjustified transfers that improperly reduce the extent of the funds that would otherwise be available for payment to the General Unsecured Creditors under the Plan, the Plan Agent shall have all of the rights and remedies set forth in the foregoing paragraph 38, and shall have standing to take any action, and appear in any proceeding, in the Bankruptcy Court to redress such misappropriation or unjustified transfers. After reimbursement of reasonable fees and expenses, the Plan Agent shall distribute any proceeds realized through any such action to General Unsecured Creditors on a *pro rata* basis and provide notice thereof to the Reorganized Debtors.

41. Any of the deadlines contained herein may be revised upon the written agreement of the Reorganized Debtors and the Plan Agent without the need for any further order of the Bankruptcy Court.

42. The Parties agree to make reasonable efforts to take all necessary actions in good faith to consummate and effectuate the provisions set forth herein and contemplated hereby. The Parties intend to work together in good faith to fulfill their respective obligations under this Stipulation and the Debtors' Plan and not to default in those obligations.

43. In consideration and adoption of the foregoing provisions, the Committee supports and will take reasonable steps to promote the confirmation of the Debtors' Plan, including any amendments thereto that are not inconsistent with the terms of this Stipulation.

44.     The Committee Members have submitted ballots rejecting the Petitioning Creditors' Plan, and the Committee will not support confirmation of the Petitioning Creditors' Plan.  However, the Committee and its members reserve their rights with regard to any amended plan(s) of reorganization filed with the Bankruptcy Court.

DATED:  May 21, 2021.

STINSON LLP

By:  /s/ Anthony P. Cali
        Thomas J. Salerno
        Anthony P. Cali
        *Attorneys for Debtors*

ALLEN BARNES & JONES, PLC

By:  /s/ Hilary L. Barnes
        Hilary L. Barnes
        *Attorneys for the Official Committee of Unsecured Creditors*

I hereby certify that on May 21, 2021 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Karen Graves
CORE/3522310.0002/167042670.1

# Exhibit B

Execution of this settlement term sheet (the "Settlement Term Sheet") is binding on EZconn Corporation ("EZconn"), eGTran Corporation ("eGTran"), Devon Investment, Inc. ("Devon"), and Crestwood Capital Corporation ("Crestwood"), Mr. Cheng-Sun Lan (collectively, the "Petitioning Creditors"), Mr. Chi-Jen (Dennis) Lan, and Polar Star Management, Ltd. (collectively with the Petitioning Creditors, the "Creditors and Interest Holders"), Andes Industries, Inc. ("Andes") and PCT International, Inc. ("PCT" together with Andes, the "Debtors"), and the Official Committee of Unsecured Creditors (the "Committee"). The Creditors and Interest Holders, the Debtors, and the Committee are collectively referred to as the "Parties" or individually as "Party." The Settlement Term Sheet must be approved by the Bankruptcy Court upon joint motion by the Debtors, the Committee, and the Creditors and Interest Holders pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Once approved, the *Debtors' Amended Joint Plan of Reorganization Dated August 10, 2020* [Dkt. No. 361] ("Debtors' Plan") as amended by the *Stipulation in Support of Confirmation of the Debtors' Amended Joint Plan of Reorganization Dated August 10, 2020* [Dkt. No. 459] (the "Stipulation") shall be supplemented to incorporate the terms of this Settlement Term Sheet (the "Plan"). For purposes of this agreement, the "effective date" shall be the date on which the Settlement Term Sheet is approved the Bankruptcy Court ("Agreement Effective Date"). The Parties agree as follows:

1. The Creditors and Interest Holders, the Debtors, and the Committee agree to consensual plan agreement, which is fully set forth herein.

2. The Plan reorganizes the Debtors and they continue post confirmation as an operating entity—as restructured (collectively the "Reorganized Debtors").

    a. Upon confirmation of the Plan, Petitioning Creditors shall withdraw the *Petitioning Creditors' Third Amended Plan of Reorganization of Andes Industries, Inc. and PCT International, Inc. Dated September 10, 2020* [Dkt. No. 406]. While the Plan memorializing the terms set forth herein is in the confirmation process, Petitioning Creditors agree that their plan will be held in abeyance, to be withdrawn upon confirmation of the Plan.

    b. Upon confirmation of the Plan, the Debtors shall withdraw the *Motion to Designate the Votes of Petitioning Creditors under Section 1126(e)* [Dkt. No. 775].

    c. The Petitioning Creditors shall withdraw (i) the *Petitioning Creditors' Objection to the Debtors' Amended Joint Plan of Reorganization Dated August 10, 2020* [Dkt. No. 437] and (ii) the *Motion to Convert Cases to Chapter 7 Proceedings* [Dkt. No, 626]; Mr. Dennis Lan shall withdraw *Chi-Jen (Dennis) Lan's Objection to Debtors' Joint Amended Plan Dated August 10, 2020* [Dkt. No. 339]; and Polar Star Management, Ltd. ("Polar Star") shall withdraw *Polar Star Management Ltd.'s Objection to Debtors' Joint Amended Plan Dated August 10, 2020* [Dkt. No. 440].

    d. The Creditors and Interest Holders shall support the Plan. The Parties agree the provisions herein are non-material as to parties other than the Parties hereto such that resolicitation is not required. Moreover, the Petitioning Creditors shall not object to and support confirmation of the Plan, and not object to any other issues in the case (including claims allowance of any other claimants, allowance of

administrative claims, etc.). In other words, provided the Debtors are moving forward with confirmation of the Plan, Petitioning Creditors shall not be an impediment in the case.

e. The Creditors and Interest Holders shall receive a $1.85M cash payment from a non-Debtor third party on the Effective Date of the Plan.

f. Pursuant to the Plan, the existing equity interests in Andes shall be deemed extinguished as of the Effective Date of the Plan. Equity in Andes (as reorganized— "Reorganized Andes") shall be issued to Newco, the equity holders of which will be Steve Youtsey, Wendy Chaio and Wade Ferguson, on the Effective Date of the Plan. Plan at § V(A).

g. Upon confirmation of the Plan, the Debtors and the Committee shall dismiss the adversary proceeding against the Petitioning Creditors, with prejudice, stipulating and agreeing that the Petitioning Creditors have allowed claims in the full amounts set forth in their proof of claims, and PCT shall dismiss its pending appeal 19-15518, the last remaining appeal in the Ninth Circuit (currently administratively closed due to the bankruptcy case, with the ability to reopen). For the avoidance of doubt, the Committee shall dismiss its subordination claim against the Petitioning Creditors in the adversary proceeding with prejudice.

h. Payments shall be made on account of the Petitioning Creditors' ~$22M claims under the Plan, but with the following modifications:

     i. The Petitioning Creditors shall receive their *pro rata* share of the $1.2M Effective Date payment due to general unsecured creditors under terms of the Stipulation. The Petitioning Creditors' estimated *pro rata* share of this payment is ~$768k, which when combined with the $1.85M payment from 2.d above is a total of $2.618M[1] to the Petitioning Creditors on the Effective Date of the Plan.

     ii. The payoff amount of the Petitioning Creditors' claims would be subject to a sliding scale which incentivizes the Debtors to pay off the Petitioning Creditors' claims as soon as possible (earlier payoff = bigger discount). The total payoff amount ranges from $6.9M by the 1st Anniversary of the Effective Date of the Plan to $15.0M by the 5th Anniversary of the Effective Date of the Plan and is based on the <u>total</u> payments to the Creditors and Interest Holders (that is, the payoff figures below include the $2.618M described above and any other Plan payments made):

     1. Payoff if Paid by the 1st Anniversary of Effective Date: $6.9M

---

[1] To clarify, on the Effective Date of the Plan, the Petitioning Creditors shall receive a total of $2.618M from a combination of funds from a non-Debtor third party and the Debtors. Accordingly, if the Petitioning Creditors' pro rata share of the $1.2M Effective Date payment is less than $768,000, the non-Debtor third party will need to increase the amount of the cash payment to the Creditors and Interest Holders.

Case 2:19-bk-14585-FSS    Doc 8921    Filed 05/22/21    Entered 05/22/21 18:43:11    Desc
Main Document    Page 28 of 61

2. Payoff if Paid after the 1st Anniversary of the Effective Date and on or before the 2nd Anniversary of Effective Date: $11.5M

3. Payoff if Paid after the 2nd Anniversary of the Effective Date and on or before the 3rd Anniversary of Effective Date: $12.5M

4. Payoff if Paid after the 3rd Anniversary of the Effective Date and on or before the 4th Anniversary of Effective Date: $13.5M

5. Payoff if Paid after the 4th Anniversary of the Effective Date and on or before the 5th Anniversary of Effective Date: $15.0M (all of the foregoing defined as "Early Payment Options")

6. For calculation of Early Payment Options, the payoff amount shall be the amounts set forth above less any payments already made to the Creditors and Interest Holders under the Plan.

iii. If Debtors do not exercise their Early Payment Options on or before the 5th Anniversary of the Effective Date of the Plan, the Petitioning Creditors shall have their ~$22M allowed claims (reduced by any payments already made under the Plan), and Debtors are obligated to pay the Petitioning Creditors' claims in full under the terms of the Plan. Plan at § IV(C)(3).

iv. The provisions in the Stipulation shall apply to post-confirmation monitoring under the Plan.

3. The Debtors and Creditors and Interest Holders shall not disparage each other in any press release or public comment. Any comment or press release that directly or indirectly mentions the other Party must be preapproved by the other Party, the approval by either Debtors or Creditors and Interest Holders shall not be unreasonably withheld. The foregoing shall not prevent the Debtors from reasonably prosecuting its case against Debtor's former counsel, Robins Kaplan and Coppersmith Brockelman, including filing pleadings, arguing at hearings, or deposing or interviewing witnesses.

4. Effective upon the Agreement Effective Date, each of the Debtors on the one hand, and each of the Creditors and Interest Holders on the other hand, releases and forever discharges the other, together with each released Party's agents, employees, directors, officers, members, managers, shareholders, contractors, consultants, attorneys, successors and assigns, representatives, parents, subsidiaries, and affiliates, from any and all claims, actions, causes of action, demands, rights, damages, costs, losses, expenses, compensation, and liabilities whatsoever, whether in law or equity, known or unknown, existing up until the Agreement Effective Date, including, but not limited to, any and all existing claims related to patents including any patents that are registered internationally which could potentially be the subject of future litigation, *i.e.*, enforcement actions, wrongful patenting, etc. No Party hereby releases any claims of patent infringement for acts occurring after the Agreement Effective Date. In response to such a claim of patent infringement, the Party sued for patent infringement shall be able to bring any patent invalidity or unenforceability defense (which may be asserted as a counterclaim for declaratory judgment) as to the

asserted patent(s) based on pre-Agreement Effective Date facts or events, but such defense or counterclaim cannot revive any other claim that is released by this Paragraph 4.

5. Forum Selection Clause: Any Claims arising out of an alleged breach of, the enforcement of, or dispute of the rights under this Settlement Term Sheet that occur after the Effective Date of the Plan, shall exclusively be brought in the state or federal courts located in Maricopa County, Arizona, without waiver of a Party's right of removal from state to federal court. The Parties consent to venue and personal jurisdiction as to such claims exclusively in Maricopa County, Arizona. For all other claims, the Parties reserve the right to contest jurisdiction and venue. To be clear, any claims that arise relating to the Plan shall, in accordance with the Plan, be subject to the jurisdiction of the bankruptcy court. Plan at XI.

6. The Settlement Term Sheet shall be binding on any subsequently appointed Chapter 7 or Chapter 11 Trustee.

7. To be clear, any and all unleased claims and causes of actions of the Debtors, including the malpractice action against Robins Kaplan and any rights with respect to this Settlement Term Sheet (once approved by the Bankruptcy Court), remain in the ownership and control of the Reorganized Debtors.

8. By executing this Settlement Term Sheet today, March 19, 2021, undersigned counsel has entered into a binding agreement. The foregoing notwithstanding, the Parties acknowledge that the terms herein are subject to Bankruptcy Court approval, which all Parties agree they will seek expeditiously and support.

SNELL & WILMER L.L.P.


By:/s/   *Christopher H. Bayley*

Christopher H. Bayley
Benjamin W. Reeves
Molly J. Kjartanson
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ  85004-2202
*Attorneys for Petitioning Creditors*


HAGENS BERMAN SOBOL SHAPIRO LLP


By:/s/   *Greer N. Shaw*

Greer N. Shaw

# Exhibit C

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

### TRGP INDICATIVE OFFER OF TERMS TO PCT FOR FINANCING

*This document (the "Term Sheet") is intended as a summary of certain terms and conditions the Parties (as defined below) intend to incorporate into Definitive Documents that will govern this transaction. This Term Sheet is not and should not be construed as a commitment or offer to provide any financing. These are indicative terms and any investment in all respects are subject to final legal and business due diligence, legal documentation, and investment committee approval. This Term Sheet does not create any legal obligation or duty of care, except with respect to Sections 4, 7-13. The existence of this Term Sheet and its contents are strictly confidential.*

**1.      Parties**: TRGP Investment Partners, LP, on behalf of itself and/or an affiliated investment vehicle ("TRGP"), on the one hand, and PCT International, Inc. and other affiliates ("PCT"), on the other hand. TRGP and PCT are individually referred to herein as a "Party", and together as the "Parties".

**2.      Purpose**: This Term Sheet is intended – subject in all respects to the satisfactory completion of due diligence and execution of the Definitive Documents – to set forth certain terms and conditions pursuant to which TRGP will provide financing to PCT (as described in Section 6, below, the "Financing"), as well as strategic litigation and resolution advice, in connection with PCT's malpractice litigation against Robins Kaplan, LLP, Coopersmith Brockelman, PLC, Christopher K. Larus, Esq., and Denise Rahne, Esq. (the "Defendants"), filed on February 26, 2021 in the Superior Court for the State of Arizona In and For the County of Maricopa (the "Litigation").

**3.      Counsel**: This Term Sheet and the execution of Definitive Documents are conditioned on PCT keeping Beus Gilbert McGroder PLLC as counsel in the Litigation (the "Lawyers"), recognizing that selection of counsel is PCT's choice alone.

**4.      Work Product, Attorney-Client Privilege, Common Interest and Confidentiality**: The Parties agree that all of their communications, directly between or through their representatives, concerning any non-public information shall be provided to the receiving Party, and maintained by the receiving Party, in strict confidence. The Parties further agree that all non-public information that has been or will be provided between them, directly or through their representatives, shall be maintained by the receiving Party in strict confidence. The Parties further agree that their negotiations, this Term Sheet, and the proposed terms contained herein or otherwise negotiated between them and the information provided by either Party to the other Party in the course of such negotiations, including ongoing diligence, are strictly confidential and may not be disclosed to any non-Party except as provided herein or as required by law or regulation.

The Parties agree that the disclosing Party may suffer irreparable harm if any such information were to be further disclosed to a person other than a Party, its counsel, advisors, partners, and shareholders (provided that any such recipients agree to confidentiality obligations being at least as restrictive as those defined in this Term Sheet), without the disclosing Party's express, written permission. The disclosing Party shall be entitled to relief, including injunctive and other equitable relief, in the event of a breach of confidentiality.

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

The Parties also agree that TRGP's interests with regard to the Litigation are fully aligned with those of PCT, and that the transmission to TRGP of non-public information shall be protected from involuntary disclosure to the maximum extent permitted by law, including under the work product doctrine, the attorney-client privilege, the common interest doctrine, and any other applicable privilege or immunity that protects such information from compelled disclosure to others.

5.     **Settlement and Other Litigation Decisions**:  All settlement and litigation decisions concerning the Litigation shall belong solely to PCT.  PCT shall keep TRGP informed on a regular and consistent basis of material events and strategic issues, including offers of settlement (prior to acceptance of any such offers); provided that PCT shall not be obligated to share any confidential materials or information protected from disclosure by the attorney-client privilege or the attorney work product doctrine, except with the express advice of PCT's counsel.

6.     **Financial Terms**:

   A.  Litigation Fees & Expenses

      (i)  TRGP will provide financing to provide PCT with working operational capital up to $5,000,000 ("Investment Cap").

      (ii) PCT may use any part of the Investment Cap for operational expenses, payments under any plan of reorganization or, if necessary, for any attorneys' fees and expenses necessary to prosecute the Litigation.

   B.  Proceeds Waterfall

Any Recoveries shall first be distributed to the Lawyers at their contingency rate of 33% or 40% dependent on the stage of the litigation as agreed to between the PCT and the Lawyers in the terms of their engagement.  Remaining Recoveries[1] ("Net Recoveries") from the Litigation shall be the sole recourse for payment of amounts hereunder to TRPG hereunder, and shall be distributed as follows:

---

[1] "Recoveries" shall be defined broadly in the Definitive Documents, so that, for example, it encompasses monetary and non-monetary outcomes that could arise as a result of the Litigation.  Generally, "Recoveries" in the context of the Definitive Documents means any and all consideration and value received by Plaintiff (prior to any netting, offset, reduction or deduction of any fees, costs, expenses, payment of taxes or payment of any other amounts) in partial or complete resolution of the Litigation, including: (a) any and all gross, pre-tax monetary awards, damages, recoveries, judgments or other property or value awarded to, recovered by or on behalf of (or reduced to a debt owed to) Plaintiff on account or as a result or by virtue (directly or indirectly) of Plaintiff's claims against a Defendant,  whether by negotiation, arbitration, mediation, diplomatic efforts, lawsuit, settlement, pursuant to a corporate transaction of any nature, or otherwise, and includes all of Plaintiff's legal and/or equitable rights, title and interest in and/or to any of the foregoing, whether in the nature of ownership, lien, security interest or otherwise, plus (b) any recovered interest, penalties, attorneys' fees and costs in connection with any of the foregoing (including, without limitation, sanctions, post-judgment interest, costs and fees), plus (c) any consequential, actual, punitive, exemplary or double or treble damages awarded or recovered on account thereof, plus (d) any interest awarded or later accruing on any of the foregoing (including, without limitation, post-judgment interest), plus (e) any recoveries against attorneys, accountants, experts or officers in connection with any of the foregoing or the pursuit of the Claim plus (f) any non-cash recoveries.

2

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

(i) **First,** 100% of Net Recoveries to TRGP until TRGP has received an amount equal to the specified time-based multiple of funds actually invested by TRGP as per the table below:

| Recovery received between | and | MOIC |
|---|---|---|
| 0 months | 15 months | 2.00x |
| 15 months | 30 months | 3.00x |
| 30 months | thereafter | 3.50x |

(ii) **Second,** 100% of remaining Net Recoveries up to $40 million to PCT (i.e. of the first $40 million in Net Recoveries, TRGP shall receive its distribution in B(i) and PCT shall receive the remainder; Net Recoveries in excess of $40 million will be distributed according to B(iii));

(iii) **Third,** 5% of remaining Net Recoveries to TRGP thereafter, stepping up to 10% if the Litigation is resolved and Recoveries are distributed 36 months or more after the effective date of Definitive Documents.

7. **Exclusivity**: PCT hereby agrees that, in consideration of TRGP's agreement to spend time and money continuing its due diligence and negotiating Definitive Documents, for a period of 45 days from the execution of this Term Sheet, PCT (including its representatives) shall not initiate, solicit, negotiate, encourage, accept, entertain, or communicate in relation to, or make any offer or proposal, regarding financing for any claims relating to the Litigation from anyone other than TRGP or its affiliates.

8. **Representations and Warranties**: The Definitive Documents will contain representations, warranties, and covenants customary for a transaction of this type.

9. **Expenses of the Parties**: Each Party shall bear its own expenses incurred in the negotiation and execution of this Term Sheet and the Definitive Documents; provided, however, that outside costs incurred by TRGP in conducting due diligence or in drafting or negotiating this Term Sheet and Definitive Documents, up to a cap of $50,000, shall be considered a part of the Financing.

10. **Remedies:** The Parties each agree that the obligations of the Firm set forth in this Agreement are necessary and reasonable to protect TRGP. The Parties agree that monetary damages would be inadequate to compensate TRGP for any breach by the Firm of the covenants and agreements set forth herein. Accordingly, the Firm agrees and acknowledges that any violation of this Term Sheet will cause TRGP irreparable harm and that, in addition to other available remedies, TRGP shall be entitled to obtain injunctive relief against the Firm, without needing to prove actual damages.

11. **Governing Law/Arbitration**: This Term Sheet and all acts and transactions pursuant hereto shall be governed, construed, and interpreted in accordance with the laws of the State of New York without giving effect to principles of conflicts of laws. Any Dispute (as defined in

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

Exhibit A) shall be resolved by the Parties pursuant to the dispute resolution procedures attached hereto as Exhibit A.

**12.    Counterparts:**  This Term Sheet may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

**13.    Notices:**  All notices and communications shall be in writing sent to a Party at such address as the Party may designate in writing, and they may be delivered by email (effective when sent) or by hand or courier (effective on delivery).

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

4

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

Submitted by:

TRGP INVESTMENT PARTNERS, LP

By: *Michael Rozen*

0F5356032BFA484...

Name: Michael K. Rozen
Title:  Managing Partner

Notice Address:

1114 Avenue of the Americas, 41st floor
New York, NY  10036

Email: mrozen@trgpcap.com


Accepted and Agreed:

PCT International, Inc.

By: _____

Name: Steve Youtsey
Title:

Notice Address:

Email: steve@andesinc.com

5

## EXHIBIT A:

## DISPUTE RESOLUTION PROCEDURES

1.   **Procedure**.  Any dispute, claim, or controversy arising out of, relating to, or in connection with the Term Sheet or the formation, applicability, breach, termination, validity, or enforceability thereof (a "Dispute"), shall be resolved by the Parties pursuant to these procedures.

2.   **Informal Settlement Meeting**.  The Parties shall attempt in good faith to resolve any Dispute promptly by negotiation between executives who have authority to settle the Dispute and who are at a higher level of management than the Persons with direct responsibility for administration of the Term Sheet.  In the event of any Dispute not resolved in the normal course of business, a Party wishing to commence arbitration shall first serve written notice on the other Party demanding that negotiation commence (a "Dispute Notice").  Within 7 calendar days after delivery of a Dispute Notice, the receiving Party shall submit a written response (a "Response Notice").  The Dispute Notice and Response Notice shall include with reasonable particularity (a) a statement of the relevant Party's position and a summary of arguments supporting that position, and (b) the name and title of the executive who will represent the relevant Party.  Within 7 calendar days after the date specified for the delivery of the Response Notice, the executives of the Parties shall meet, telephonically, via video conference or at a mutually acceptable time and place.

3.   **Confidential**.  All offers, promises, conduct, and statements, whether oral or written, made in the course of the negotiation by or on behalf of any of the Parties are confidential, privileged, and inadmissible for any purpose, including impeachment, in arbitration, or other proceeding involving the Parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation.

4.   **Statute of Limitations**.  All applicable statutes of limitation and defenses based on the passage of time shall be tolled while the procedures set forth in this Exhibit A are being invoked and for 14 calendar days thereafter.  The Parties will take such action, if any, required to effectuate such tolling.

5.   **Arbitration**.  At any time after the passage of 28 calendar days after service of a Dispute Notice, any Party may initiate arbitration proceedings.  Any disputes concerning the propriety of the commencement of the arbitration shall be finally settled by the arbitral tribunal. Any Dispute, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in New York, New York before one neutral arbitrator and shall be administered by JAMS pursuant to JAMS' Streamlined Arbitration Rules and Procedures in effect at the time of the arbitration, except as they may be modified herein or by another written agreement signed by the Parties.  The language to be used in the arbitral proceedings will be English.  The Parties waive their right to any form of recourse based on grounds other than those contained in the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 or the Federal Arbitration Act insofar as such

6

DocuSign Envelope ID: 6F418A43-C927-4781-B8E3-20DD0D543F52

waiver can be validly made. The arbitration award shall be final and binding on the Parties, and the Parties undertake to carry out the award without any delay. Judgment upon the award may be entered by any court having jurisdiction of the award or having jurisdiction over the relevant Party or its assets.

6. **Arbitral Confidentiality**. The Parties agree that the arbitration shall be kept confidential. The existence of the arbitration, any nonpublic information provided in, or documents otherwise prepared for the purposes of the arbitration, and orders or awards made in the arbitration (together, the "Confidential Arbitral Information") shall not be disclosed to any non-party except the tribunal, JAMS, the Parties, their counsel, experts, witnesses, accountants and auditors, insurers and reinsurers, and any other Person necessary to the conduct of the arbitration. Notwithstanding the foregoing, a Party may disclose Confidential Arbitral Information to the extent that disclosure may be required to fulfill a legal duty, protect, or pursue a legal right, or enforce or challenge an award in bona fide legal proceedings or to enforce the arbitration in any appropriate legal forum. This confidentiality provision survives termination of the Term Sheet and of any arbitration brought pursuant to this Exhibit A.

7. **Damages**. The arbitrator shall be entitled to award damages to the prevailing party, including damages for lost profits and interest as allowed under New York law.

8. **Attorneys' Fees**. The arbitrator shall have discretion to award to the prevailing party, if any, the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the issues, the arbitrator may award the prevailing party an appropriate percentage of the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the issue(s) on which the party prevailed in the arbitration.

9. **Federal Arbitration Act**. The Parties acknowledge that the Term Sheet evidences a transaction involving interstate commerce. Notwithstanding the provision in this Exhibit A with respect to applicable substantive law, any arbitration conducted pursuant to the terms of this Exhibit A shall be governed by the Federal Arbitration Act (9 U.S.C. Secs. 1-16).

10. **Additional Remedies**. These procedures shall not (a) preclude a Party from seeking injunctive relief or other provisional remedies in aid of arbitration from a court of appropriate jurisdiction. For purposes of the foregoing, but without limiting any of the preceding subsections of these procedures, the Participating Insurers irrevocably consent to the exclusive jurisdiction of the courts of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, with respect to any proceeding arising from the Term Sheet or involving these procedures and waive any defense of forum non conveniens in connection with any such proceeding.

# Exhibit D

Exhibit D

© PCT International, Inc.   CONFIDENTIAL DOCUMENT - DO NOT DISTRIBUTE OR SHARE

# PCT Effective Date Payment

| Creditor Class | Description | 2021. Sep |
|---|---|---|
| Class 2-A | Citizens Bank | |
| Class 2-B | Pawnee Leasing | |
| Class 2-C | Sallyport | |
| Class 2-D | Virgin Mobile | |
| Class 3-A | Unsecured -Critical Vendors | |
| Class 3-B | General Unsecured Claims | 272,672 |
| | Convenience Class | 43,077 |
| Class 3-C | Petitioning Creditors | 812,659 |
| Class 3-D | Subsidiaries | 71,592 |
| Class 3-E | SY | |
| | Sub Total | $ 1,200,000 |

| | | |
|---|---|---|
| **EZ Conn Settlement payment** | | $ 1,850,000 |

| **Administrative Cost-Legal** | (Estimated) | |
|---|---|---|
| | **Description** | **Payment** |
| Sacks Tierney | Debtor's Counsel | 160,000 |
| Perkins Coie LLP | Debtor's Counsel | 550,000 |
| Stinson LLP | Debtor's Counsel | 275,000 |
| Keegan Linscott &Associates | Financial Advisor | 100,000 |
| TBD | Creditor Committee Plan Agent | 35,000 |
| Wilenchick & Bartness | Special Counsel | 80,000 |
| Allen Barnes & Jones | Committee Counsel | 175,000 |
| | Sub Total | $ 1,375,000 |
| **Vendors** | | |
| DSC | | 2,100,000 |
| Other | | 300,000 |
| | Sub Total: | $ 2,400,000 |

| | | |
|---|---|---|
| **Total Payment:** | $ | **6,825,000** |

# Funds

| | |
|---|---|
| Equity Contribution | 2,000,000 |
| Liquidity Line | 4,950,000 |
| **Total Cash available:** $ | **6,950,000** |

# Exhibit E

© PCT International, Inc.    CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

## Andes/PCT Payment Plan

2021

| Vendor Class | Description | Balance | Jul | Aug | Sep (effective date) | Oct | Nov | Dec | 2021 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 10,900 | | | | | | 602 | 602 | – | – | – | 602 |
| Class 2-B | Pawnee Leasing | 3,053 | | | | | | 169 | 169 | – | – | – | 169 |
| Class 2-C | Sallyport | 65,679 | | | | | | 8,556 | 8,556 | – | – | – | 8,556 |
| Class 2-D | Virgin Media | 738,814 | | | | | | 200,000 | 200,000 | – | – | – | 200,000 |
| Class 3-A | Unsecured –Critical Vendo | 750,000 | | | | | | 63,225 | 63,225 | – | – | – | 63,225 |
| Class 3-B | General Unsecured Claims | 7,617,483 | | | 410,172 | | | 87,500 | 497,672 | – | – | 410,172 | 87,500 |
| | | 43,077 | | | 43,077 | | | | 43,077 | – | | | |
| Class 3-C | Petitioning Creditors | 22,702,771 | | | 812,659 | | | 75,000 | 887,659 | – | – | 812,659 | 75,000 |
| | | | | | 1,850,000 | | | | 1,850,000 | | | 1,850,000 | |
| Class 3-D | Subsidiaries | 2,000,000 | | | 71,591 | | | – | 71,591 | | | 71,591 | |
| Class 3-E | SY | 2,221,706 | | | | | | | – | – | – | – | – |
| | | $ 36,153,483 | $ – | $ – | $ 3,187,500 | $ – | $ – | $ 435,052 | $ 3,622,552 | $– | $– | $ 3,187,500 | $ 435,052 |

These projections assume that the Allowed Claim of the Petitioning Creditors in Class 3-C will be paid in full over the term of the Plan.

Pursuant to the PC Settlement, the Debtors have the option to pay the Petitioning Creditors' claim early at substantial discount.

## Andes/PCT Payment Plan
2022

| Vendor Class | Description | 2022 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 2,408 | 602 | 602 | 602 | 602 |
| Class 2-B | Pawnee Leasing | 676 | 169 | 169 | 169 | 169 |
| Class 2-C | Sallyport | 34,225 | 8,556 | 8,556 | 8,556 | 8,556 |
| Class 2-D | Virgin Media | 538,814 | 200,000 | 200,000 | 138,814 | – |
| Class 3-A | Unsecured –Critical Vendors | 252,900 | 63,225 | 63,225 | 63,225 | 63,225 |
| Class 3-B | General Unsecured Claims | 650,000 | 162,500 | 162,500 | 162,500 | 162,500 |
| | | – | | | | |
| Class 3-C | Petitioning Creditors | 420,681 | 104,836 | 104,836 | 115,039 | 95,969 |
| | | | | | | |
| Class 3-D | Subsidiaries | 39,387 | 10,111 | 10,111 | 11,095 | 8,069 |
| Class 3-E | SY | – | – | – | – | – |
| | | $   1,939,091 | $   550,000 | $   550,000 | $   500,000 | $   339,091 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

## Andes/PCT Payment Plan
**2023**

| Vendor Class | Description | 2023 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 2,408 | 602 | 602 | 602 | 602 |
| Class 2-B | Pawnee Leasing | 676 | 169 | 169 | 169 | 169 |
| Class 2-C | Sallyport | 22,898 | 5,785 | 5,785 | 11,328 | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured -Critical Vendors | 252,900 | 63,225 | 63,225 | 63,225 | 63,225 |
| Class 3-B | General Unsecured Claims | 750,000 | 162,500 | 162,500 | 212,500 | 212,500 |
| Class 3-C | Petitioning Creditors | – 1,356,271 | 244,157 | 244,157 | 467,098 | 400,860 |
| Class 3-D | Subsidiaries | 125,847 | 23,562 | 23,562 | 45,078 | 33,645 |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 2,511,001 | $ 500,000 | $ 500,000 | $ 800,000 | $ 711,001 |

## Andes/PCT Payment Plan
**2024**

| Vendor Class | Description | 2024 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 2,408 | 602 | 602 | 602 | 602 |
| Class 2-B | Pawnee Leasing | 676 | 169 | 169 | 169 | 169 |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured –Critical Vendors | 180,975 | 63,225 | 117,750 | – | – |
| Class 3-B | General Unsecured Claims | 1,000,000 | 212,500 | 212,500 | 287,500 | 287,500 |
| Class 3-C | Petitioning Creditors | 1,796,074 | 203,784 | 154,070 | 648,932 | 789,288 |
| Class 3-D | Subsidiaries | 163,822 | 19,720 | 14,909 | 62,797 | 66,396 |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 3,143,955 | $ 500,000 | $ 500,000 | $ 1,000,000 | $ 1,143,955 |

## Andes/PCT Payment Plan
**2025**

| Vendor Class | Description | 2025 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 2,472 | 602 | 602 | 602 | 666 |
| Class 2-B | Pawnee Leasing | 856 | 169 | 169 | 169 | 349 |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured -Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | 893,344 | 187,500 | 205,844 | 250,000 | 250,000 |
| Class 3-C | Petitioning Creditors | 2,528,428 | 284,078 | 723,010 | 682,771 | 838,569 |
| Class 3-D | Subsidiaries | 235,299 | 27,651 | 70,375 | 66,458 | 70,815 |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 3,660,398 | $ 500,000 | $ 1,000,000 | $ 1,000,000 | $ 1,160,398 |

## Andes/PCT Payment Plan
**2026**

| Vendor Class | Description | 2026 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | 64 | 64 | – | – | – |
| Class 2-B | Pawnee Leasing | – | – | – | – | – |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured -Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | 1,164,469 | 303,916 | 305,236 | 305,317 | 250,000 |
| | | – | | | | |
| Class 3-C | Petitioning Creditors | 4,135,373 | 1,089,231 | 1,088,087 | 1,088,014 | 870,041 |
| Class 3-D | Subsidiaries | 393,466 | 106,789 | 106,676 | 106,669 | 73,331 |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 5,693,372 | $ 1,500,000 | $ 1,500,000 | $ 1,500,000 | $ 1,193,372 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT — DO NOT DISTRIBUTE OR SHARE

## Andes/PCT Payment Plan

**2027**

| Vendor Class | Description | 2027 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | – | – | – | – | – |
| Class 2-B | Pawnee Leasing | – | – | – | – | – |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured –Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | 1,264,252 | 303,306 | 304,645 | 406,301 | 250,000 |
| | | – | | | | |
| Class 3-C | Petitioning Creditors | 4,543,781 | 1,088,805 | 1,087,588 | 1,593,699 | 773,689 |
| Class 3-D | Subsidiaries | 215,656 | 107,889 | 107,768 | – | – |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 6,023,689 | $ 1,500,000 | $ 1,500,000 | $ 2,000,000 | $ 1,023,689 |

© PCT International, Inc.    CONFIDENTIAL DOCUMENT — DO NOT DISTRIBUTE OR SHARE

## Andes/PCT Payment Plan
**2028**

| Vendor Class | Description | 2028 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | – | – | – | – | – |
| Class 2-B | Pawnee Leasing | – | – | – | – | – |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured -Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | 1,235,902 | 327,651 | 329,125 | 329,126 | 250,000 |
| Class 3-C | Petitioning Creditors | – 4,226,518 | 1,172,349 | 1,170,875 | 1,170,874 | 712,420 |
| Class 3-D | Subsidiaries | – | – | – | – | – |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 5,462,420 | $ 1,500,000 | $ 1,500,000 | $ 1,500,000 | $ 962,420 |

### Andes/PCT Payment Plan
2029

| Vendor Class | Description | 2029 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | – | – | – | – | – |
| Class 2-B | Pawnee Leasing | – | – | – | – | – |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured –Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | 768,429 | 562,079 | 206,350 | – | – |
| Class 3-C | Petitioning Creditors | 2,935,334 | 937,921 | 944,238 | 1,000,000 | 53,175 |
| Class 3-D | Subsidiaries | – | – | – | – | – |
| Class 3-E | SY | – | – | – | – | – |
| | | $ 3,703,763 | $ 1,500,000 | $ 1,150,588 | $ 1,000,000 | $ 53,175 |

## Andes/PCT Payment Plan
**2030**

| Vendor Class | Description | 2030 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|
| Class 2-A | Citizens Bank | – | – | – | – | – |
| Class 2-B | Pawnee Leasing | – | – | – | – | – |
| Class 2-C | Sallyport | – | – | – | – | – |
| Class 2-D | Virgin Media | – | – | – | – | – |
| Class 3-A | Unsecured –Critical Vendors | – | – | – | – | – |
| Class 3-B | General Unsecured Claims | – | – | – | – | – |
| | | – | | | | |
| Class 3-C | Petitioning Creditors | – | – | – | – | – |
| | | | | | | |
| Class 3-D | Subsidiaries | 1,076,882 | 1,076,882 | – | – | – |
| Class 3-E | SY | 2,619,019 | – | 2,619,019 | – | – |
| | | $ 3,695,901 | $ 1,076,882 | $ 2,619,019 | $    – | $    – |

© PCT International, Inc.    CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**

(Currency: '000 USD)

2021 Cash Budget FCST

| | Actual | Actual | Actual | Actual | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar | Apr | May | June | Jul | Aug | Sep | Oct | Nov | Dec | FY2021 |
| Beginning Balance before Contribution | 213 | 88 | 39 | 263 | 37 | 122 | 53 | 3,033 | 3,425 | 3,626 | 3,553 | 3,975 | 213 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 428 | 629 | 559 | 780 | 1,000 | 900 | 1,200 | 1,440 | 1,420 | 1,620 | 1,620 | 1,600 | 13,196 |
| Non Financed AR | 184 | 127 | 231 | 72 | | | | | 200 | | | 200 | |
| Pre-pay | - | | | - | - | - | - | - | - | - | - | - | - |
| DSC Licensing Fee | | | | | | | | | | | | | |
| DSC Profit Sharing | | | | | | | | | | | | | - |
| Total cash Receipts | 612 | 756 | 790 | 852 | 1,000 | 900 | 1,200 | 1,440 | 1,620 | 1,620 | 1,620 | 1,800 | 13,196 |
| | | | | | | | | | | | | | |
| Cash Outflow | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 90 | 85 | 35 | 227 | 300 | 300 | 2,500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,016 |
| Freight & Duty/storage | 144 | 184 | 105 | 216 | 90 | 90 | 150 | 150 | 150 | 160 | 160 | 160 | 952 |
| Total Product Cost | 234 | 269 | 140 | 443 | 390 | 390 | 2,650 | 1,150 | 1,150 | 1,160 | 1,160 | 1,160 | 12,968 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 318 | 307 | 256 | 428 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 4,045 |
| Payroll -Asia | | | | 35 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 504 |
| Travel & Meals | | | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 58 |
| Insurance | 4 | 98 | 35 | 40 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 264 |
| Legal/Auditing/Consulting | 25 | | | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 275 |
| ERP/IT System/data | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 164 |
| Facility (rent, utility, maintenance, prepay) | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 240 |
| Trade Show/promotion | | | | | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 100 |
| Other | 16 | 5 | 5 | 21 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 243 |
| Total G&A | 402 | 449 | 340 | 575 | 431 | 431 | 431 | 431 | 431 | 431 | 431 | 431 | 5,893 |
| Net cash provided/(used) by operating activities | (24) | 38 | 310 | (166) | 179 | 79 | (1,881) | (141) | 39 | 29 | 29 | 209 | (1,300) |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM FINANCING/EQUITY ACTIVITIES** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | | | | | | | | 300 | | 500 | | 800 |
| New Financing | | | | | | 4,950 | | | | | | | |
| Equity | | | | | | | | 2,000 | | | | | 2,000 |
| PPP Loan payment if adverse ruling on appeal | | | | | | | | | | | | | |
| Interest | 62 | 67 | 86 | 61 | 69 | 83 | 89 | 92 | 97 | 102 | 107 | 107 | 1,022 |
| Other | | | | | | | | | | | | | |
| Net cash provided/(used)in financing/equity activities | (62) | (67) | (86) | (61) | (69) | (83) | 4,861 | 1,908 | 203 | (102) | 393 | (107) | 6,728 |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | | 20 | | | | 40 | | | 40 | | | 40 | 140 |
| Bankruptcy Legal/Professional Fees | 40 | | | | 25 | 25 | - | 1,375 | | | | | 1,465 |
| Net cash provided (used) in investing/other activities | (40) | (20) | - | - | (25) | (65) | - | (1,375) | (40) | - | - | (40) | (1,605) |
| | | | | | | | | | | | | | |
| Net Cash Provided (used) | (126) | (49) | 224 | (226) | 85 | (69) | 2,980 | 392 | 202 | (73) | 422 | 62 | 3,824 |
| | | | | | | | | | | | | | |
| Ending Cash balance before payment plan | 88 | 39 | 263 | 37 | 122 | 53 | 3,033 | 3,425 | 3,626 | 3,553 | 3,975 | 4,037 | 4,037 |
| Contribute to CH11 Plan | | | | | | | | | 1,338 | | 435 | | 1,773 |
| Settlement payment | | | | | | | | | 1,850 | | | | 1,850 |
| End Bal. | 88 | 39 | 263 | 37 | 122 | 53 | 3,033 | 3,425 | 439 | 366 | 788 | 414 | 414 |

© PCT International, Inc.    CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
2022 Cash Budget FCST

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance before Contribution | 414 | 402 | 878 | 853 | 1,223 | 1,244 | 1,264 | 2,031 | 2,198 | 2,364 | 3,115 | 3,317 | 414 |
| CASH FLOW FROM OPERATING ACTIVITIES | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 2,265 | 2,265 | 2,265 | 2,399 | 2,399 | 2,399 | 2,932 | 2,932 | 2,932 | 3,065 | 3,065 | 3,065 | 31,982 |
| Non Financed AR | 384 | 384 | 384 | 407 | 407 | 407 | 497 | 497 | 497 | 520 | 520 | 520 | 5,424 |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 106 | 106 | 106 | 113 | 113 | 113 | 138 | 138 | 138 | 144 | 144 | 144 | 1,500 |
| DSC Profit Sharing | 89 | 89 | 89 | 94 | 94 | 94 | 115 | 115 | 115 | 120 | 120 | 120 | 1,250 |
| Total cash Receipts | 2,844 | 2,844 | 2,844 | 3,012 | 3,012 | 3,012 | 3,681 | 3,681 | 3,681 | 3,848 | 3,848 | 3,848 | 40,156 |
| | | | | | | | | | | | | | |
| Cash Outflow | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 2,072 | 2,072 | 2,072 | 2,194 | 2,194 | 2,194 | 2,682 | 2,682 | 2,682 | 2,804 | 2,804 | 2,804 | 29,256 |
| Freight & Duty/storage | 148 | 148 | 148 | 157 | 157 | 157 | 191 | 191 | 191 | 200 | 200 | 200 | 2,087 |
| Total Product Cost | 2,220 | 2,220 | 2,220 | 2,351 | 2,351 | 2,351 | 2,873 | 2,873 | 2,873 | 3,004 | 3,004 | 3,004 | 31,343 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 399 | 4,783 |
| Payroll -Asia | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 504 |
| Travel & Meals | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 72 |
| Insurance | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 290 |
| Legal/Auditing/Consulting | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 282 |
| ERP/IT System/data | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 167 |
| Facility (rent, utility, maintenance, prepay) | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Trade Show/promotion | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 100 |
| Other | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 96 |
| Total G&A | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 6,534 |
| | | | | | | | | | | | | | |
| Net cash provided/(used) by operating activities | 80 | 80 | 80 | 117 | 117 | 117 | 263 | 263 | 263 | 300 | 300 | 300 | 2,280 |
| | | | | | | | | | | | | | |
| CASH FLOW FROM FINANCING/EQUITY ACTIVITIES | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | - | 500 | - | 350 | - | - | 600 | - | - | 550 | - | - | 2,000 |
| New Financing | | | | | | | | | | | | | |
| Equity | | | | | | | | | | | | | - |
| PPP Loan | | | | | | | | | | | | | |
| Interest | 88 | 100 | 100 | 92 | 92 | 92 | 93 | 93 | 93 | 95 | 95 | 95 | 1,126 |
| Other | | | | | | | | | | | | | |
| Net cash provided/(used)in financing/equity activities | (88) | 400 | (100) | 258 | (92) | (92) | 507 | (93) | (93) | 455 | (95) | (95) | 874 |
| | | | | | | | | | | | | | |
| CASH FLOWS FROM INVESTING/OTHER ACTIVITIES | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| Net cash provided (used) in investing/other activities | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| | | | | | | | | | | | | | |
| Net Cash Provided (used) | (12) | 475 | (25) | 371 | 21 | 21 | 767 | 167 | 167 | 751 | 201 | 201 | 3,104 |
| | | | | | | | | | | | | | |
| Ending  Cash balance before payment plan | 402 | 878 | 853 | 1,223 | 1,244 | 1,264 | 2,031 | 2,198 | 2,364 | 3,115 | 3,317 | 3,518 | 3,518 |
| Contribute to CH11  Plan | | | 550 | | | 550 | | | 500 | | | 339 | 1,939 |
| Settlement payment | | | | | | | | | | | | | - |
| End Bal. | 402 | 878 | 303 | 673 | 694 | 164 | 931 | 1,098 | 764 | 1,515 | 1,717 | 1,579 | 1,579 |

**Andes/PCT International, Inc**

(Currency: '000 USD)

**2023 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance before Contribution** | 1,579 | 1,525 | 1,471 | 2,418 | 2,394 | 2,370 | 2,346 | 2,609 | 3,022 | 3,633 | 3,777 | 3,921 | 1,579 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 3,047 | 3,047 | 3,047 | 3,226 | 3,226 | 3,226 | 3,943 | 3,943 | 3,943 | 4,122 | 4,122 | 4,122 | 43,017 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 122 | 122 | 122 | 129 | 129 | 129 | 158 | 158 | 158 | 165 | 165 | 165 | 1,725 |
| DSC Profit Sharing | 102 | 102 | 102 | 108 | 108 | 108 | 132 | 132 | 132 | 138 | 138 | 138 | 1,438 |
| **Total cash Receipts** | 3,271 | 3,271 | 3,271 | 3,463 | 3,463 | 3,463 | 4,233 | 4,233 | 4,233 | 4,426 | 4,426 | 4,426 | 46,180 |
| **Cash Outflow** | | | | | | | | | | | | | |
| Inventory payment (including AP changes) | 2,496 | 2,496 | 2,496 | 2,642 | 2,642 | 2,642 | 3,230 | 2,930 | 3,230 | 3,376 | 3,376 | 3,376 | 35,231 |
| Freight & Duty/storage | 170 | 170 | 170 | 180 | 180 | 180 | 220 | 220 | 220 | 230 | 230 | 230 | 2,400 |
| **Total Product Cost** | 2,666 | 2,666 | 2,666 | 2,822 | 2,822 | 2,822 | 3,450 | 3,150 | 3,450 | 3,606 | 3,606 | 3,606 | 37,631 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 446 | 5,355 |
| Payroll -Asia | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 546 |
| Travel & Meals | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 83 |
| Insurance | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 319 |
| Legal/Auditing/Consulting | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 289 |
| ERP/IT System/data | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 183 |
| prepay) | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| Trade Show/promotion | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 115 |
| Other | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 100 |
| **Total G&A** | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 603 | 7,231 |
| **Net cash provided/(used) by operating activities** | 3 | 3 | 3 | 39 | 39 | 39 | 181 | 481 | 181 | 217 | 217 | 217 | 1,618 |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | | - | - | 1,000 | - | 500 | | - | 500 | 2,000 |
| Equity | | | 1,000 | | | | | | | | | | 1,000 |
| PPP Loan | | | | | | | (847) | | | | | | (847) |
| Interest | 53 | 53 | 53 | 58 | 58 | 58 | 67 | 63 | 67 | 68 | 68 | 68 | 734 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used)in financing/equity activities** | (53) | (53) | 947 | (58) | (58) | (58) | 86 | (63) | 433 | (68) | (68) | 432 | 1,419 |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| **Net Cash Provided (used)** | (54) | (54) | 946 | (24) | (24) | (24) | 263 | 414 | 610 | 144 | 144 | 644 | 2,986 |
| **Ending  Cash balance before payment plan** | 1,525 | 1,471 | 2,418 | 2,394 | 2,370 | 2,346 | 2,609 | 3,022 | 3,633 | 3,777 | 3,921 | 4,565 | 4,565 |
| Contribute to CH11  Plan | | | 500 | | | 500 | | | 800 | | | 711 | 2,511 |
| **End Bal.** | 1,525 | 1,471 | 1,918 | 1,894 | 1,870 | 1,346 | 1,609 | 2,022 | 1,833 | 1,977 | 2,121 | 2,054 | 2,054 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
2024 Cash Budget FCST

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance before Contribution | 2,054 | 2,006 | 1,957 | 2,408 | 2,394 | 2,380 | 2,366 | 3,508 | 3,651 | 3,794 | 4,475 | 4,656 | 2,054 |
| CASH FLOW FROM OPERATING ACTIVITIES | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 3,399 | 3,399 | 3,399 | 3,599 | 3,599 | 3,599 | 4,399 | 4,399 | 4,399 | 4,599 | 4,599 | 4,599 | 47,986 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DSC Licensing Fee | 141 | 141 | 141 | 149 | 149 | 149 | 182 | 182 | 182 | 190 | 190 | 190 | 1,984 |
| DSC Profit Sharing | 117 | 117 | 117 | 124 | 124 | 124 | 152 | 152 | 152 | 158 | 158 | 158 | 1,653 |
| Total cash Receipts | 3,657 | 3,657 | 3,657 | 3,872 | 3,872 | 3,872 | 4,732 | 4,732 | 4,732 | 4,947 | 4,947 | 4,947 | 51,623 |
| Cash Outflow | | | | | | | | | | | | | |
| Inventory payment (including AP changes) | 2,765 | 2,765 | 2,765 | 2,928 | 2,928 | 2,928 | 3,578 | 3,578 | 3,578 | 3,741 | 3,741 | 3,741 | 39,035 |
| Freight & Duty/storage | 190 | 190 | 190 | 201 | 201 | 201 | 245 | 245 | 245 | 257 | 257 | 257 | 2,677 |
| Total Product Cost | 2,955 | 2,955 | 2,955 | 3,128 | 3,128 | 3,128 | 3,824 | 3,824 | 3,824 | 3,997 | 3,997 | 3,997 | 41,712 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 502 | 6,028 |
| Payroll -Asia | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 580 |
| Travel & Meals | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 96 |
| Insurance | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 351 |
| Legal/Auditing/Consulting | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 297 |
| ERP/IT System/data | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 193 |
| (utility, yard, bldg, maintenance), prepay | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 132 |
| Other | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 104 |
| Total G&A | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 678 | 8,141 |
| Net cash provided/(used) by operating activities | 24 | 24 | 24 | 65 | 65 | 65 | 230 | 230 | 230 | 271 | 271 | 271 | 1,769 |
| CASH FLOW FROM FINANCING/EQUITY | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | 500 | | - | - | 1,000 | - | | 500 | - | - | 2,000 |
| Equity | | | | | | | | | | | | | - |
| Interest | 68 | 68 | 68 | 75 | 75 | 75 | 83 | 83 | 83 | 86 | 86 | 86 | 937 |
| Other | | | | | | | | | | | | | |
| Net cash provided/(used)in financing/equity activities | (68) | (68) | 432 | (75) | (75) | (75) | 917 | (83) | (83) | 414 | (86) | (86) | 1,063 |
| CASH FLOWS FROM INVESTING/OTHER ACTIVITIES | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| Net cash provided (used) in investing/other act | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| Net Cash Provided (used) | (49) | (49) | 451 | (14) | (14) | (14) | 1,143 | 143 | 143 | 681 | 181 | 181 | 2,782 |
| Ending  Cash balance before payment plan | 2,006 | 1,957 | 2,408 | 2,394 | 2,380 | 2,366 | 3,508 | 3,651 | 3,794 | 4,475 | 4,656 | 4,837 | 4,837 |
| Contribute to CH11  Plan | | | 500 | | | 500 | | | 1,000 | | | 1,144 | 3,144 |
| End Bal. | 2,006 | 1,957 | 1,908 | 1,894 | 1,880 | 1,366 | 2,508 | 2,651 | 1,794 | 2,475 | 2,656 | 1,693 | 1,693 |

**Andes/PCT International, Inc**
(Currency: '000 USD)
**2025 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance before Contribution** | 1,693 | 1,715 | 1,737 | 1,758 | 2,324 | 2,389 | 2,454 | 4,209 | 4,463 | 4,718 | 5,023 | 5,327 | 1,693 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 3,792 | 3,792 | 3,792 | 4,015 | 4,015 | 4,015 | 4,907 | 4,907 | 4,907 | 5,130 | 5,130 | 5,130 | 53,528 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 162 | 162 | 162 | 171 | 171 | 171 | 209 | 209 | 209 | 219 | 219 | 219 | 2,281 |
| DSC Profit Sharing | 135 | 135 | 135 | 143 | 143 | 143 | 174 | 174 | 174 | 182 | 182 | 182 | 1,901 |
| **Total cash Receipts** | 4,088 | 4,088 | 4,088 | 4,328 | 4,328 | 4,328 | 5,290 | 5,290 | 5,290 | 5,531 | 5,531 | 5,531 | 57,710 |
| **Cash Outflow** | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 3,017 | 3,017 | 3,017 | 3,195 | 3,195 | 3,195 | 3,905 | 3,905 | 3,905 | 4,082 | 4,082 | 4,082 | 42,598 |
| Freight & Duty/storage | 212 | 212 | 212 | 224 | 224 | 224 | 274 | 274 | 274 | 286 | 286 | 286 | 2,986 |
| **Total Product Cost** | 3,229 | 3,229 | 3,229 | 3,419 | 3,419 | 3,419 | 4,179 | 4,179 | 4,179 | 4,369 | 4,369 | 4,369 | 45,584 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 562 | 6,742 |
| Payroll -Asia | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 607 |
| Travel & Meals | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 110 |
| Insurance | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 31 | 367 |
| Legal/Auditing/Consulting | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 305 |
| ERP/IT System/data | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 203 |
| prepay | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 152 |
| Other | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 115 |
| **Total G&A** | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 747 | 8,962 |
| **Net cash provided/(used) by operating activities** | 112 | 112 | 112 | 163 | 163 | 163 | 365 | 365 | 365 | 415 | 415 | 415 | 3,164 |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | 500 | - | - | 1,500 | - | - | - | - | - | 2,000 |
| Equity | | | | | | | | | | | | | - |
| Interest | 86 | 86 | 86 | 93 | 93 | 93 | 106 | 106 | 106 | 107 | 107 | 107 | 1,176 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used)in financing/equity activities** | (86) | (86) | (86) | 407 | (93) | (93) | 1,394 | (106) | (106) | (107) | (107) | (107) | 824 |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| **Net Cash Provided (used)** | 22 | 22 | 22 | 565 | 65 | 65 | 1,755 | 255 | 255 | 304 | 304 | 304 | 3,938 |
| **Ending Cash balance before payment plan** | 1,715 | 1,737 | 1,758 | 2,324 | 2,389 | 2,454 | 4,209 | 4,463 | 4,718 | 5,023 | 5,327 | 5,631 | 5,631 |
| **Contribute to CH11 Plan** | | | 500 | | | 1,000 | | | 1,000 | | | 1,160 | 3,660 |
| **End Bal.** | 1,715 | 1,737 | 1,258 | 1,824 | 1,889 | 954 | 2,709 | 2,963 | 2,218 | 2,523 | 2,827 | 1,971 | 1,971 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
**2026 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance before Contribution | 1,971 | 2,234 | 2,496 | 2,759 | 3,092 | 3,425 | 3,757 | 4,371 | 4,984 | 6,094 | 6,774 | 7,453 | 1,971 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 4,247 | 4,247 | 4,247 | 4,496 | 4,496 | 4,496 | 5,496 | 5,496 | 5,496 | 5,745 | 5,745 | 5,745 | 59,951 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 181 | 181 | 181 | 192 | 192 | 192 | 234 | 234 | 234 | 245 | 245 | 245 | 2,555 |
| DSC Profit Sharing | 151 | 151 | 151 | 160 | 160 | 160 | 195 | 195 | 195 | 204 | 204 | 204 | 2,129 |
| **Total cash Receipts** | 4,578 | 4,578 | 4,578 | 4,848 | 4,848 | 4,848 | 5,925 | 5,925 | 5,925 | 6,194 | 6,194 | 6,194 | 64,636 |
| **Cash Outflow** | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 3,150 | 3,150 | 3,150 | 3,335 | 3,335 | 3,335 | 4,076 | 4,076 | 4,076 | 4,261 | 4,261 | 4,261 | 44,468 |
| Freight & Duty/storage | 237 | 237 | 237 | 251 | 251 | 251 | 307 | 307 | 307 | 321 | 321 | 321 | 3,345 |
| **Total Product Cost** | 3,387 | 3,387 | 3,387 | 3,586 | 3,586 | 3,586 | 4,383 | 4,383 | 4,383 | 4,582 | 4,582 | 4,582 | 47,812 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 624 | 7,488 |
| Payroll -Asia | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 638 |
| Travel & Meals | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 123 |
| Insurance | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 384 |
| Legal/Auditing/Consulting | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 26 | 314 |
| ERP/IT System/data | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 214 |
| (utility, bond, duty, maintenance, prepay) | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 170 |
| Other | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 126 |
| **Total G&A** | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 818 | 9,818 |
| **Net cash provided/(used) by operating activities** | 374 | 374 | 374 | 444 | 444 | 444 | 724 | 724 | 724 | 794 | 794 | 794 | 7,006 |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | - | - | - | - | - | 500 | - | - | - | 500 |
| Equity | | | | | | | | | | | | | - |
| Interest | 107 | 107 | 107 | 107 | 107 | 107 | 107 | 107 | 110 | 110 | 110 | 110 | 1,293 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used) in financing/equity activities** | (107) | (107) | (107) | (107) | (107) | (107) | (107) | (107) | 390 | (110) | (110) | (110) | (793) |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| **Net Cash Provided (used)** | 263 | 263 | 263 | 333 | 333 | 333 | 613 | 613 | 1,110 | 680 | 680 | 680 | 6,162 |
| **Ending Cash balance before payment plan** | 2,234 | 2,496 | 2,759 | 3,092 | 3,425 | 3,757 | 4,371 | 4,984 | 6,094 | 6,774 | 7,453 | 8,133 | 8,133 |
| Contribute to CH11 Plan | | | 1,500 | | | 1,500 | | | 1,500 | | | 1,193 | 5,693 |
| **End Bal.** | 2,234 | 2,496 | 1,259 | 1,592 | 1,925 | 757 | 1,371 | 1,984 | 1,594 | 2,274 | 2,953 | 2,440 | 2,440 |

© PCT International, Inc.    CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
**2027 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2027 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance** | 2,440 | 2,729 | 3,018 | 3,306 | 3,670 | 4,034 | 4,398 | 5,062 | 5,725 | 6,389 | 7,128 | 7,867 | 2,440 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 4,671 | 4,671 | 4,671 | 4,946 | 4,946 | 4,946 | 6,045 | 6,045 | 6,045 | 6,320 | 6,320 | 6,320 | 65,947 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 199 | 199 | 199 | 211 | 211 | 211 | 258 | 258 | 258 | 269 | 269 | 269 | 2,811 |
| DSC Profit Sharing | 166 | 166 | 166 | 176 | 176 | 176 | 215 | 215 | 215 | 224 | 224 | 224 | 2,342 |
| **Total cash Receipts** | 5,036 | 5,036 | 5,036 | 5,332 | 5,332 | 5,332 | 6,517 | 6,517 | 6,517 | 6,814 | 6,814 | 6,814 | 71,099 |
| | | | | | | | | | | | | | |
| **Cash Outflow** | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 3,501 | 3,501 | 3,501 | 3,707 | 3,707 | 3,707 | 4,531 | 4,531 | 4,531 | 4,736 | 4,736 | 4,736 | 49,424 |
| Freight & Duty/storage | 261 | 261 | 261 | 276 | 276 | 276 | 337 | 337 | 337 | 353 | 353 | 353 | 3,679 |
| **Total Product Cost** | 3,761 | 3,761 | 3,761 | 3,983 | 3,983 | 3,983 | 4,868 | 4,868 | 4,868 | 5,089 | 5,089 | 5,089 | 53,103 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 669 | 8,028 |
| Payroll -Asia | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 55 | 662 |
| Travel & Meals | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 136 |
| Insurance | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 33 | 401 |
| Legal/Auditing/Consulting | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 323 |
| ERP/IT System/data | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 226 |
| (security, yearly, maintenance), prepay | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 187 |
| Other | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 138 |
| **Total G&A** | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 872 | 10,461 |
| **Net cash provided/(used) by operating activities** | 403 | 403 | 403 | 478 | 478 | 478 | 778 | 778 | 778 | 853 | 853 | 853 | 7,535 |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | - | - | - | - | - | - | - | - | - | |
| Equity | | | | | | | | | | | | | |
| Interest | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used) in financing/equity activities** | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (1,320) |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| | | | | | | | | | | | | | |
| **Net Cash Provided (used)** | 289 | 289 | 289 | 364 | 364 | 364 | 664 | 664 | 664 | 739 | 739 | 739 | 6,165 |
| | | | | | | | | | | | | | |
| **Ending  Cash balance before payment plan** | 2,729 | 3,018 | 3,306 | 3,670 | 4,034 | 4,398 | 5,062 | 5,725 | 6,389 | 7,128 | 7,867 | 8,605 | 8,605 |
| | | | | | | | | | | | | | |
| Contribute to CH11  Plan | | | 1,500 | | | 1,500 | | | 2,000 | | | 1,024 | 6,024 |
| | | | | | | | | | | | | | |
| End Bal. | 2,729 | 3,018 | 1,806 | 2,170 | 2,534 | 1,398 | 2,062 | 2,725 | 1,389 | 2,128 | 2,867 | 2,582 | 2,582 |

© PCT International, Inc.  CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

## Andes/PCT International, Inc
(Currency: '000 USD)
**2028 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2028 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 2,582 | 2,794 | 3,007 | 3,220 | 3,507 | 3,794 | 4,081 | 4,664 | 5,248 | 5,831 | 6,489 | 7,146 | 2,582 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 5,045 | 5,045 | 5,045 | 5,342 | 5,342 | 5,342 | 6,529 | 6,529 | 6,529 | 6,825 | 6,825 | 6,825 | 71,222 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 215 | 215 | 215 | 228 | 228 | 228 | 278 | 278 | 278 | 291 | 291 | 291 | 3,035 |
| DSC Profit Sharing | 179 | 179 | 179 | 190 | 190 | 190 | 232 | 232 | 232 | 242 | 242 | 242 | 2,530 |
| **Total cash Receipts** | 5,439 | 5,439 | 5,439 | 5,759 | 5,759 | 5,759 | 7,039 | 7,039 | 7,039 | 7,359 | 7,359 | 7,359 | 76,787 |
| **Cash Outflow** | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 3,898 | 3,898 | 3,898 | 4,127 | 4,127 | 4,127 | 5,044 | 5,044 | 5,044 | 5,274 | 5,274 | 5,274 | 55,029 |
| Freight & Duty/storage | 281 | 281 | 281 | 298 | 298 | 298 | 364 | 364 | 364 | 381 | 381 | 381 | 3,973 |
| **Total Product Cost** | 4,179 | 4,179 | 4,179 | 4,425 | 4,425 | 4,425 | 5,409 | 5,409 | 5,409 | 5,654 | 5,654 | 5,654 | 59,002 |
| **General and Administrative** | | | | | | | | | | | | | |
| Payroll -PCTI | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 8,614 |
| Payroll -Asia | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 728 |
| Travel & Meals | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 147 |
| Insurance | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 419 |
| Legal/Auditing/Consulting | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 332 |
| ERP/IT System/data | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 238 |
| prepay | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 202 |
| Other | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 154 |
| **Total G&A** | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 933 | 11,193 |
| **Net cash provided/(used) by operating activities** | 327 | 327 | 327 | 401 | 401 | 401 | 698 | 698 | 698 | 772 | 772 | 772 | 6,592 |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | - | - | - | - | - | - | - | - | - | |
| Equity | | | | | | | | | | | | | |
| Interest | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used)in financing/equity activities** | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (1,320) |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| **Net Cash Provided (used)** | 213 | 213 | 213 | 287 | 287 | 287 | 583 | 583 | 583 | 657 | 657 | 657 | 5,222 |
| **Ending  Cash balance before payment plan** | 2,794 | 3,007 | 3,220 | 3,507 | 3,794 | 4,081 | 4,664 | 5,248 | 5,831 | 6,489 | 7,146 | 7,803 | 7,803 |
| Contribute to CH11  Plan | | | 1,500 | | | 1,500 | | | 1,500 | | | 962 | 5,462 |
| **End Bal.** | 2,794 | 3,007 | 1,720 | 2,007 | 2,294 | 1,081 | 1,664 | 2,248 | 1,331 | 1,989 | 2,646 | 2,341 | 2,341 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
**2029 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance before Contribution | 2,341 | 2,582 | 2,824 | 3,065 | 3,385 | 3,704 | 4,023 | 4,654 | 5,284 | 5,915 | 6,623 | 7,331 | 2,341 |
| CASH FLOW FROM OPERATING ACTIVITIES | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 5,297 | 5,297 | 5,297 | 5,609 | 5,609 | 5,609 | 6,855 | 6,855 | 6,855 | 7,167 | 7,167 | 7,167 | 74,783 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | |
| DSC Licensing Fee | 226 | 226 | 226 | 239 | 239 | 239 | 292 | 292 | 292 | 305 | 305 | 305 | 3,187 |
| DSC Profit Sharing | 188 | 188 | 188 | 199 | 199 | 199 | 243 | 243 | 243 | 255 | 255 | 255 | 2,656 |
| Total cash Receipts | 5,711 | 5,711 | 5,711 | 6,047 | 6,047 | 6,047 | 7,391 | 7,391 | 7,391 | 7,727 | 7,727 | 7,727 | 80,627 |
| Cash Outflow | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 4,093 | 4,093 | 4,093 | 4,333 | 4,333 | 4,333 | 5,296 | 5,296 | 5,296 | 5,537 | 5,537 | 5,537 | 57,780 |
| Freight & Duty/storage | 296 | 296 | 296 | 313 | 313 | 313 | 382 | 382 | 382 | 400 | 400 | 400 | 4,172 |
| Total Product Cost | 4,388 | 4,388 | 4,388 | 4,646 | 4,646 | 4,646 | 5,679 | 5,679 | 5,679 | 5,937 | 5,937 | 5,937 | 61,952 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll -PCTI | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 741 | 8,893 |
| Payroll -Asia | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 64 | 764 |
| Travel & Meals | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 154 |
| Insurance | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 461 |
| Legal/Auditing/Consulting | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 342 |
| ERP/IT System/data | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 251 |
| (utility, bank delays, maintenance, prepay) | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 212 |
| Other | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 168 |
| Total G&A | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 967 | 11,606 |
| Net cash provided/(used) by operating activities | 356 | 356 | 356 | 433 | 433 | 433 | 745 | 745 | 745 | 822 | 822 | 822 | 7,068 |
| CASH FLOW FROM FINANCING/EQUITY | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | - | - | - | - | - | - | - | - | - | - |
| Equity | | | | | | | | | | | | | - |
| Interest | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 1,320 |
| Other | | | | | | | | | | | | | |
| Net cash provided/(used)in financing/equity activities | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (110) | (1,320) |
| CASH FLOWS FROM INVESTING/OTHER ACTIVITIES | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| Net cash provided (used) in investing/other act | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| Net Cash Provided (used) | 241 | 241 | 241 | 319 | 319 | 319 | 630 | 630 | 630 | 708 | 708 | 708 | 5,698 |
| Ending  Cash balance before payment plan | 2,582 | 2,824 | 3,065 | 3,385 | 3,704 | 4,023 | 4,654 | 5,284 | 5,915 | 6,623 | 7,331 | 8,040 | 8,040 |
| Contribute to CH11  Plan | | | 1,500 | | | 1,500 | | | 1,000 | | | 1,928 | 5,927.66 |
| End Bal. | 2,582 | 2,824 | 1,565 | 1,885 | 2,204 | 1,023 | 1,654 | 2,284 | 1,915 | 2,623 | 3,331 | 2,112 | 2,112 |

© PCT International, Inc.   CONFIDENTIAL DOCUMENT – DO NOT DISTRIBUTE OR SHARE

**Andes/PCT International, Inc**
(Currency: '000 USD)
**2030 Cash Budget FCST**

| | FCST Jan | FCST Feb | FCST Mar | FCST Apr | FCST May | FCST June | FCST Jul | FCST Aug | FCST Sep | FCST Oct | FCST Nov | FCST Dec | FY2030 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance before Contribution** | 2,112 | 2,377 | 2,639 | 2,902 | 3,245 | 3,589 | 3,933 | 4,604 | 5,274 | 5,945 | 6,697 | 7,450 | 2,112 |
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Sales related receiving | | | | | | | | | | | | | |
| AR Financing | 5,562 | 5,562 | 5,562 | 5,889 | 5,889 | 5,889 | 7,198 | 7,198 | 7,198 | 7,525 | 7,525 | 7,525 | 78,523 |
| Non Financed AR | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pre-pay | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DSC Licensing Fee | 237 | 237 | 237 | 251 | 251 | 251 | 307 | 307 | 307 | 321 | 321 | 321 | 3,347 |
| DSC Profit Sharing | 198 | 198 | 198 | 209 | 209 | 209 | 256 | 256 | 256 | 267 | 267 | 267 | 2,789 |
| **Total cash Receipts** | 5,997 | 5,997 | 5,997 | 6,349 | 6,349 | 6,349 | 7,760 | 7,760 | 7,760 | 8,113 | 8,113 | 8,113 | 84,658 |
| | | | | | | | | | | | | | |
| **Cash Outflow** | | | | | | | | | | | | | |
| Invnetory payment (including AP changes) | 4,297 | 4,297 | 4,297 | 4,550 | 4,550 | 4,550 | 5,561 | 5,561 | 5,561 | 5,814 | 5,814 | 5,814 | 60,669 |
| Freight & Duty/storage | 310 | 310 | 310 | 329 | 329 | 329 | 402 | 402 | 402 | 420 | 420 | 420 | 4,381 |
| **Total Product Cost** | 4,608 | 4,608 | 4,608 | 4,879 | 4,879 | 4,879 | 5,963 | 5,963 | 5,963 | 6,234 | 6,234 | 6,234 | 65,050 |
| General and Administrative | | | | | | | | | | | | | |
| Payroll - PCTI | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 772 | 9,268 |
| Payroll -Asia | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 803 |
| Travel & Meals | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 162 |
| Insurance | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 507 |
| Legal/Auditing/Consulting | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 352 |
| ERP/IT System/data | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 265 |
| Facility (utility, maintenance), prepay) | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 360 |
| Trade Show/promotion | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 223 |
| Other | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 173 |
| **Total G&A** | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 1,009 | 12,111 |
| **Net cash provided/(used) by operating activities** | 380 | 380 | 380 | 461 | 461 | 461 | 788 | 788 | 788 | 870 | 870 | 870 | 7,497 |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM FINANCING/EQUITY** | | | | | | | | | | | | | |
| Net (repayments) borrowings on current Financing facility | | - | - | - | - | - | - | - | - | - | - | - | |
| | | | | | | | | | | | | | |
| Equity | | | | | | | | | | | | | |
| Interest | 110 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 113 | 1,357 |
| Other | | | | | | | | | | | | | |
| **Net cash provided/(used)in financing/equity activities** | (110) | (113) | (113) | (113) | (113) | (113) | (113) | (113) | (113) | (113) | (113) | (113) | (1,357) |
| **CASH FLOWS FROM INVESTING/OTHER ACTIVITIES** | | | | | | | | | | | | | |
| Proceeds from sale of property and equipment | | | | | | | | | | | | | |
| Purchases of property and equipment | | | | | | | | | | | | | |
| Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Bankruptcy Legal/Professional  Fees | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 50 |
| **Net cash provided (used) in investing/other act** | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (50) |
| | | | | | | | | | | | | | |
| **Net Cash Provided (used)** | 265 | 262 | 262 | 344 | 344 | 344 | 671 | 671 | 671 | 752 | 752 | 752 | 6,090 |
| | | | | | | | | | | | | | |
| **Ending  Cash balance before payment plan** | 2,377 | 2,639 | 2,902 | 3,245 | 3,589 | 3,933 | 4,604 | 5,274 | 5,945 | 6,697 | 7,450 | 8,202 | 8,202 |
| | | | | | | | | | | | | | |
| Contribute to CH11  Plan | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | |
| **End Bal.** | 2,377 | 2,639 | 2,902 | 3,245 | 3,589 | 3,933 | 4,604 | 5,274 | 5,945 | 6,697 | 7,450 | 8,202 | 8,202 |